















CAG   3/22/01   8:21

3:01-CV-00496   SEC V. PINNFUND USA, INC

*1*

*CMP.*

ORIGINAL

1  SANDRA J. HARRIS, Cal. Bar # 134153
   NICOLAS MORGAN, Cal. Bar # 166441
2  LISA A. GOK, Cal. Bar # 147660
   PATRICK O. HUNNIUS, Cal. Bar # 174633
3  DAVID J. VAN HAVERMAAT, Cal. Bar # 175761
   PETER F. DEL GRECO, Cal. Bar # 164925
4  MARC J. BLAU, Cal. Bar # 198162
   ELIZABETH P. SMITH, Cal. Bar # 210732
5
   Attorneys for Plaintiff
6  Securities and Exchange Commission
   Valerie Caproni, Regional Director
7  5670 Wilshire Boulevard, 11th Floor
   Los Angeles, California 90036-3648
8  Telephone:  (323) 965-3998
   Facsimile:  (323) 965-3908
9

10              UNITED STATES DISTRICT COURT

11         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13  SECURITIES AND EXCHANGE COMMISSION,    Case No. 01 CV 0496 H (LAB)

14           Plaintiff,                    COMPLAINT FOR VIOLATIONS OF
                                           THE FEDERAL SECURITIES LAWS
15       vs.

16  PINNFUND USA, INC., PEREGRINE
17  FUNDING, INC., ALLIED CAPITAL
    PARTNERS, GRAFTON PARTNERS, SIX
18  SIGMA, LLC A/K/A 6 SIGMA, LLC,
    MICHAEL J. FANGHELLA, JAMES L.
19  HILLMAN, RELIANCE HOLDINGS, LLC,
    KELLY COOK A/K/A KELLY JAYE A/K/A
20  KELLY SPAGNOLA,

21           Defendants.

22

23

24

25

26

27

28

FILED

01 MAR 21  AM 10:2

BY: _____  DEP

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1. This case involves the ongoing fraudulent offer and sale of over $276 million in unregistered securities by Michael J. Fanghella ("Fanghella") and James L. Hillman ("Hillman").  Fanghella and Hillman issue the securities through three entities that exclusively provide funding for PinnFund USA, Inc. ("PinnFund"), a purported sub-prime mortgage lender controlled by Fanghella.  These entities -- Allied Capital Partners ("Allied"), Grafton Partners ("Grafton"), and Six Sigma, LLC, aka 6 Sigma, LLC ("Sigma") (collectively, the "Funding Entities") -- are managed by Peregrine Funding, Inc. ("Peregrine"), an entity controlled by Hillman, PinnFund's self-styled "investment banker."[1]

2. The relief defendants, Reliance Holdings, LLC ("Reliance Holdings") and Kelly Cook ("Cook") (collectively, the "Relief Defendants"), received proceeds of the fraudulent scheme to which they have no legitimate claim.

3. The Funding Entities' unregistered offerings began in 1993, and since that time they have raised more than $276 million from at least 166 investors.  The defendants are still raising funds for the purported purpose of writing large volumes of residential home mortgages for eventual resale at a profit.

4. The PinnFund Defendants and Peregrine Defendants have made numerous material misrepresentations.  First, Peregrine and the

---

[1] Fanghella and PinnFund are collectively referred to as the "PinnFund Defendants," and Hillman, Peregrine and the Funding Entities are collectively referred to as the "Peregrine Defendants."

Funding Entities are circulating altered and fraudulent PinnFund financial statements (together with forged independent auditor's reports) created by PinnFund. The altered financial statements and forged auditor's reports contain a host of fraudulent misrepresentations and omissions that falsely present PinnFund as profitable rather than as the insolvent business that it is. Through the use of the fraudulent financial statements, PinnFund and Peregrine have concealed more than $95 million in losses incurred by PinnFund since 1997. Moreover, they have concealed the transfer of more than $107 million to Fanghella since 1997.

5. The Peregrine Defendants and PinnFund Defendants have also misrepresented the use of funds. Instead of using investor funds exclusively to finance a mortgage lending program, the Peregrine and PinnFund defendants are using investor funds also to pay Fanghella's personal expenses, including his use of at least $10 million in investor funds to buy a home, furnishings, and other accessories for his girlfriend. Finally, the Funding Entities' offering documents and quarterly updates mailed by Peregrine to investors misrepresent the cumulative dollar value of loans written and sold by PinnFund (an amount upon which the investors' purported returns are based).

6. The Peregrine Defendants, by engaging in the above conduct, have violated the registration provisions of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and (c). The Peregrine Defendants and the PinnFund Defendants, by engaging in the above conduct, have violated the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of

1934 of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### JURISDICTION

7. This Court has jurisdiction over this action pursuant to Sections 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Sections 21(d)(3)(A), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d)(3)(A), 78u(e) and 78aa.

8. Venue is proper in this district pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices and courses of conduct constituting violations of the laws alleged herein occurred within the Southern District of California and because certain of the defendants reside therein.

### THE DEFENDANTS

9. PinnFund is a California corporation headquartered in Carlsbad, California. PinnFund is a mortgage banker specializing in residential loans to purchasers with poor credit histories. The company purportedly has mortgage lender licenses in more than 40 states.

10. Peregrine is a California corporation located in Oakland, California. Peregrine currently solicits investors on behalf of PinnFund through Grafton and Allied, California limited partnerships of which Peregrine is the General Partner, and Sigma, a California limited liability company of which Peregrine is the managing member.

11. Allied is a California limited partnership. Peregrine is its general partner. Allied filed a Form D with the Commission

on June 13, 2000 in which it claimed to have raised $56.8 million from 40 investors.

12. Grafton is a California limited partnership. Peregrine is its general partner.  Grafton filed a Form D with the Commission on June 13, 2000 in which it claimed to have raised $87.2 million from 43 investors.

13. Sigma is a California limited liability company. Peregrine is its managing member.  Sigma filed a Form D with the Commission on June 13, 2000 in which it claimed to have raised $93.3 million from 18 investors.

14. Michael J. Fanghella ("Fanghella") is the Chief Executive Officer and Chairman of PinnFund.

15. James L. Hillman ("Hillman") is the president of Peregrine.

**RELIEF DEFENDANTS**

16. Reliance Holdings, LLC ("Reliance Holdings"), is a Nevada limited liability company.  Reliance Holdings holds the title on a home purchased for approximately $5 million by Fanghella for Kelly Cook in the summer of 2000.

17. Kelly Cook aka Kelly Jaye aka Kelly Spagnola ("Cook") received at least $10 million worth of gifts from Fanghella, including a $5 million home now owned by Reliance Holdings, purchased with investor funds.

**GENERAL ALLEGATIONS**

**A.    Fanghella and Hillman Create the Mortgage Lending Scheme**

18. Since 1993, PinnFund has been funded exclusively by Peregrine.  According to Peregrine's promotional material (which is included within the offering materials distributed by the Funding

Entities), PinnFund's president, Panghelia, and Peregrine's president, Hillman, together developed PinnFund and Peregrine's joint business plan:  PinnFund would write mortgage loans and Peregrine and Hillman "would provide the necessary platform capital to fund each loan and serve as PinnFund's investment banker."

19. As of October 2000, Peregrine claimed to have raised $276.5 million for PinnFund.

B.   **The Investments**

20. The investments offered by PinnFund and Peregrine are interests in the three Funding Entities:  Grafton, Allied and Sigma. The first two are limited partnerships and the securities offered are limited partnership interests.  The third entity is a limited liability company and the securities offered are membership units. All three Funding Entities provide funding to PinnFund; they do not provide funding to any other lending entities.

21. The Funding Entities' offering materials include a promotional brochure regarding Peregrine, a list of past returns on investment, past quarterly updates, and other documents.  PinnFund keeps 1.5% of each loan written, Peregrine receives .3%, and the investors, collectively, receive .2% (plus interest).  In addition, Peregrine purportedly reviews and approves all of the loans written by PinnFund.

22. The Funding Entities' respective agreements with PinnFund - which are given to investors - specify that the funds provided by the Funding Entities to PinnFund "shall be maintained by [PinnFund] in a Trust Account" and "shall be used for the sole and exclusive purpose of funding" mortgage loans.

23. The Funding Entities' securities are offered and sold by Peregrine and Hillman. Individuals who do invest make their payments to the respective Funding Entity in which they are investing. As of June 3, 2000, Grafton Partners had raised $87.2 million from 43 investors, Allied Capital Partners had raised $56.8 million from 40 investors, and Six Sigma had raised $93.3 million from 18 investors.

24. PinnFund and Fanghella also participate in the offering of securities. Fanghella, in his capacity as president of PinnFund, has held meetings with prospective investors in the Funding Entities during which he has made representations regarding PinnFund's loan volumes.

25. Potential investors have been approached as recently as February 2001. Moreover, Peregrine and the Funding Entities began in January 2001 to offer their investors the opportunity to participate in a "Dividend Reinvestment Program" through which the investors would have the option of "rolling over" their investment and purported gains into purchases of additional securities interests in the Funding Entities.

C. **The Defendants' Misrepresentations**

1. **Distribution to Investors of Altered Financial Statements and Forged Audit Report**

   a. **The Falsified Financial Statements**

26. In or about April 2000, PinnFund engaged a San Diego CPA firm to perform an audit of PinnFund's financial statements for the year ending December 31, 1999. In May 2000, the auditor issued the independent auditor's report of its audit of PinnFund's financial statements for 1999. In October 2000, PinnFund's auditor

determined that PinnFund had disseminated altered financial

statements and an audit report (the "False 1999 Financial

Statements") that were not the same as those the auditor had

prepared (the "Actual 1999 Financial Statements").

27. The False 1999 Financial Statements differ from the

Actual 1999 Financial Statements in several material respects.  For

example, the "independent auditors report" included with the Actual

1999 Financial Statements includes a paragraph stating that the

company's significant operating losses "raise substantial doubt

about its ability to continue as a going concern."  The "independent

auditors report" included with the False 1999 Financial Statements -

- which is purportedly signed by PinnFund's auditor -- omits this

paragraph.  Similarly, the balance sheet as of December 31, 1999 in

the False 1999 Financial Statements shows retained earnings of more

than $12.2 million.  In fact, the same balance sheet in the Actual

1999 Financial Statements shows a retained deficit of more than $59

million.  Moreover, the False 1999 Financial Statements

misrepresented PinnFund as profitable, showing a net profit of $2.2

million.  Actually, the company lost more than $32 million in 1999.

According to the Actual 1999 Financial Statements, PinnFund received

more than $80 million from Fanghella and transferred more than $51

million to him during the year.  These transfers of funds do not

appear in the False 1999 Financial Statements.

28. Peregrine distributed slightly modified version of the

False 1999 Financial Statements to prospective investors.  All of

the misrepresentations in the False 1999 Financial Statements are

repeated in Peregrine's False 1999 Financial Statements, but

Peregrine's False 1999 Financial Statements contain additional

misrepresentations.  Peregrine's False 1999 Financial Statements add misrepresentations concerning: (1) an additional $100 million in assets in the form of "mortgage loans and leases held for sale;" and (2) an additional $100 million in liabilities in the form of "revolving warehouse facilities."  Peregrine's False 1999 Financial Statements are accompanied by the same forged independent auditor's report as the False 1999 Financial Statements.

29. Upon learning of the dissemination of the False 1999 Financial Statements, PinnFund's auditor resigned, informed the Department of Housing and Urban Development (which has regulatory authority over certain mortgage lenders), and asked PinnFund to inform potential recipients of the False 1999 Financial Statements that they were not audited by the auditor.  The auditor did not receive a response from PinnFund.  Instead, PinnFund sent letters signed by Fanghella to various third parties assuring them of the accuracy of the False 1999 Financial Statements.

30. This was not the first time that an auditor engaged by PinnFund had discovered that third parties had obtained altered financial statements (and a forged independent auditor's report) from PinnFund.  A similar scenario had occurred in 1999 in connection with PinnFund's 1997 and 1998 financial statements.  In March 1999, PinnFund's then-auditor issued an audit of PinnFund's financial statements for the years ending December 31, 1997 and 1998 together with an independent auditor's report.  In June 1999, PricewaterhouseCoopers ("PwC") was conducting an audit of Grafton and Allied.  During the audit, PwC came across financial statements purporting to represent the 1997 and 1998 audited financial statements of PinnFund with an accompanying purported audit report

allegedly prepared by PinnFund's former auditor.  PwC asked the former auditor about the financials and the former auditor determined that the financial statements and audit report (the "False 1997-1998 Financial Statements") were not the same as those actually prepared by the auditor (the "Actual 1997-1998 Financial Statements").

31. The False 1997-1998 Financial Statements contain similar material misrepresentations to those included in the False 1999 Financial Statements.  Furthermore, the False 1997-1998 Financial Statements conceal a transfer of more than $56 million to Fanghella in 1997 and 1998 combined.  The False 1997-1998 Financial Statements were distributed to prospective investors in the Funding Entities.  Upon learning of the existence of the False 1997-1998 Financial Statements, PinnFund's then-auditor resigned, informed H.U.D. and asked PinnFund to inform potential recipients of the False 1997-1998 Financial Statements that they were not prepared by the then-auditor.  Instead, PinnFund thereafter sent letters signed by Fanghella to various third parties assuring them of the accuracy of the False 1997-1998 Financial Statements.

**b. The Falsified Financials Hide Multi-Million Dollar Transfers to Fanghella from Peregrine, Hillman and the Funding Entities.**

32. PinnFund is dependant on influxes of cash from Fanghella, which are not reflected in either the False 1997-1998 Financial Statements or the False 1999 Financial Statements. However, the funds transferred to PinnFund by Fanghella are not his, but rather belong to the Funding Entities' investors.   In two letters to PinnFund's auditors concerning the 1997 and 1998 audits,

respectively, Hillman confirmed that the monies transferred by him, Peregrine and the Funding Entities to Fanghella were loans to Fanghella, and not obligations of PinnFund.

33. This arrangement is inconsistent with what the Funding Entities' investors are told. The Funding Entities' offering documents describe a loan to PinnFund, not Fanghella. Moreover, the actual "loan" arrangement with Fanghella is hidden from investors. There is no record of transfers to and from Fanghella in the False 1997-1998 Financial Statements or the False 1999 Financial Statements. Moreover, when PwC tried to ascertain from Hillman why the loans from Peregrine and the Funding Entities did not appear on PinnFund's financial statements as a liability, he fired them.

**c. The Falsified Financial Statements Were Distributed To Investors.**

34. The False 1997-1998 Financial Statements and the False 1999 Financial Statements were created by PinnFund or Peregrine, both of which knew or should have known of their falsity and distributed them to others. Peregrine further altered the False 1999 Financial Statements, and Hillman sent the new version (Peregrine's False 1999 Financial Statements) to prospective investors. Moreover, Hillman signed letters to PinnFund's auditors confirming a loan arrangement entirely inconsistent with the description of the investment given to investors. In addition, Peregrine has claimed in its quarterly updates to investors, which are signed by Hillman, that PinnFund is profitable. However, PinnFund's true audited financial statements show losses of approximately $5 million in 1997, $22 million in 1998, and $32

- 11 -

1 million in 1999 for a total of $59 million (equal to the retained

2 deficit figure in the 1999 Actual Financial Statements).

3 **2.     The PinnFund Defendants and Peregrine Defendants Are**

4 **Misusing Investor Funds**

5      35. Peregrine told investors that their investment would

6 be deposited in a trust account to be "used for the sole and

7 exclusive purpose of" funding mortgage loans.  Instead, Peregrine

8 and Hillman funneled tens of millions of dollars in investor funds

9 directly to an account controlled by Fanghella.

10      36. In late 1999 and early 2000, Fanghella purchased gifts

11 totaling in excess of $10 million for his girlfriend (including a $5

12 million house, $2 million in cash, and a $75,000 piano) and

13 transferred at least $3.7 million to an account in his name in

14 Barbados.

15 **3.     PinnFund, Peregrine, Fanghella and Hillman are**

16 **Misrepresenting the Total Dollar Value of PinnFund's Loan**

17 **Sales.**

18      37. The Funding Entities' investors purportedly receive a

19 percentage of each PinnFund loan financed by the respective Funding

20 Entity they have invested in.  Thus, their returns are largely

21 determined by the amount of loans written by PinnFund.

22      38. However, in the quarterly updates (which are signed by

23 Hillman) sent to investors, Peregrine and the Funding Entities

24 misrepresent PinnFund's loan volume.  For example, in October 2000,

25 Peregrine reported in an update to the Funding Entities' investors

26 that PinnFund had written and sold more than $2.26 billion worth of

27 home mortgage loans in the past three months (i.e., a rate of more

28 than $9 billion per year and more than $700 million a month).  That

same month, however, PinnFund informed the state of Oregon that it hoped to reach a rate of more than $100 million a month by the end of the year.  Fanghella has made similar misrepresentations to prospective investors in the Funding Entities.  For example, in August 2000, Fanghella told a prospective investor that PinnFund would soon achieve a total loan volume of $9 billion annually.

### FIRST CLAIM FOR RELIEF

### FRAUD IN THE OFFER OR SALE OF SECURITIES

**Violations of Section 17(a) of the Securities Act**

**(Against PinnFund, Peregrine, Allied, Grafton,**

**Sigma, Fanghella and Hillman)**

39. Paragraphs 1 though 38 are realleged and incorporated herein by reference.

40. Defendants PinnFund, Peregrine, Allied, Grafton, Sigma, Fanghella and Hillman, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

    a.   with scienter, employed devices, schemes or artifices to defraud;

    b.   obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c.   engaged in transactions, practices or courses of business which operated or would operate as a

fraud or deceit upon the purchasers of such securities.

41. By reason of the foregoing, Defendants PinnFund, Peregrine, Allied, Grafton, Sigma, Fanghella and Hillman violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

**SECOND CLAIM FOR RELIEF**

**FRAUD IN CONNECTION WITH THE**

**PURCHASE OR SALE OF SECURITIES**

**Violations of Section 10(b) of the Exchange Act**

**and Rule 10b-5 thereunder**

**(Against PinnFund, Peregrine, Allied, Grafton,**

**Sigma, Fanghella and Hillman)**

42. Paragraphs 1 through 38 are realleged and incorporated herein by reference.

43. Defendants PinnFund, Peregrine, Allied, Grafton, Sigma, Fanghella and Hillman, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, with scienter:

    a.    employed devices, schemes or artifices to defraud;

    b.    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

- 14 -

c.    engaged in acts, practices or courses of

business which operated or would operate as a

fraud or deceit upon other persons.

44. By reason of the foregoing, Defendants PinnFund, Peregrine, Allied, Grafton, Sigma, Fanghella and Hillman violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## THIRD CLAIM FOR RELIEF

### OFFER AND SALE OF UNREGISTERED SECURITIES

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**(Against Peregrine, Allied, Grafton, Sigma and Hillman)**

45. Paragraphs 1 though 38 are realleged and incorporated herein by reference.

46. Defendants Peregrine, Allied, Grafton, Sigma and Hillman, and each of them, by engaging in the conduct described above, directly or indirectly:

a.    made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise;

b.    carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale; or

c. made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of any prospectus or otherwise, securities.

47. No registration statement has been filed for any of the securities offered and sold by defendants Peregrine, Allied, Grafton, Sigma and Hillman; nor were those offerings exempt from registration.

48. By reason of the foregoing, defendants Peregrine, Allied, Grafton, Sigma and Hillman, and each of them, violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c).

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.

Issue findings of fact and conclusions of law that the Defendants PinnFund, Peregrine, Allied, Grafton, Sigma, Fanghella and Hillman engaged in the alleged violations.

II.

Issue orders temporarily, preliminarily and permanently enjoining Defendants PinnFund, Peregrine, Allied, Grafton, Sigma, Fanghella and Hillman, and their officers, agents, servants, employees, and attorneys-in-fact, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from

violating, directly or indirectly, Section 17(a) of the Securities

Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

III.

Issue orders temporarily, preliminarily and permanently

enjoining Defendants Peregrine, Allied, Grafton, Sigma and Hillman,

and their officers, agents, servants, employees, and attorneys-in-

fact, and all persons in active concert or participation with them

who receive actual notice of the injunction by personal service or

otherwise, and each of them, from violating, directly or indirectly,

Sections 5(a) and (c) of the Securities Act.

IV.

Issue a temporary restraining order and a preliminary

injunction freezing the assets of each of the Defendants,

prohibiting Defendants from destroying documents, repatriating

assets, allowing expedited discovery, appointing a receiver over

Defendants PinnFund, Peregrine, Allied, Grafton, and Sigma, and for

accountings.

V.

Enter an order that Defendants PinnFund, Peregrine,

Allied, Grafton, Sigma, Fanghella and Hillman disgorge all profits

gained directly or indirectly from the illegal conduct, together

with prejudgment interest thereon.

VI.

Enter an order that Relief Defendants disgorge all profits

gained directly or indirectly from the Peregrine Defendants' and the

PinnFund Defendants' illegal conduct.

Enter an order that Defendants PinnFund, Peregrine, Allied, Grafton, Sigma, Fanghella and Hillman pay civil penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

### VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### IX.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED:   March 20, 2001

_____
Nicolas Morgan
Attorney for Plaintiff
Securities and Exchange
Commission

ORIGINAL

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

SECURITIES AND EXCHANGE
COMMISSION

**DEFENDANTS** PINNFUND USA, INC., PEREGRINE FUNDING,
INC., ALLIED CAPITAL PARTNERS, GRAFTON
PARTNERS, SIX SIGMA, LLC, A.K.A 6 SIGMA, LLC,
MICHAEL J. FANGHELLA (con't., see attachment)

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** SAN DIEGO COUNTY
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
NICOLAS MORGAN   323-965-3998
SEC
5670 WILSHIRE BLVD., 11TH FLOOR
LOS ANGELES, CA 90036-3648

**ATTORNEYS (IF KNOWN)**

SEE ATTACHMENT

'01 CV 0496 H (LAB)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)** (For Diversity Cases Only)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

SEE ATTACHMENT

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

[nature of suit checkbox grid]

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   DEMAND $   JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE          DOCKET NUMBER

DATE 3/20/01   SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)



**ATTACHMENT TO CIVIL COVER SHEET**

**I(a) DEFENDANTS:**     JAMES L. HILLMAN, RELIANCE HOLDINGS,
LLC, KELLY COOK A/K/A KELLY JAYE A/K/A
KELLY SPAGNOLA

**I(c) ATTORNEYS:**     IRVING M. EINHORN
LAW OFFICES OF IRVING M. EINHORN
11900 OLYMPIC BOULEVARD, SUITE 510
LOS ANGELES, CA 90064-1151
***Attorney for Defendant PinnFund USA, Inc.***

MITCH DUBICK
DYSART & DUBICK, LLP
701 B STREET, SUITE 1525
SAN DIEGO, CA 92101-8152
***Attorney for Defendant Michael J. Fanghella***

TOM BROWN
SHEPPARD, MULLIN, RICHTER & HAMPTON LLC
333 S. HOPE STREET, 48TH FLOOR
LOS ANGELES, CA 90071
TELEPHONE: 213-617-5479
FACSIMILE: 213-620-1398
***Attorney for Defendant James L. Hillman***

CHARLES T. SPAGNOLA
12453 LEWIS STREET, #102
GARDEN GROVE, CA 92640
***Attorney for Defendant Kelly Cook a/k/a
Kelly Jaye a/k/a Kelly Spagnola***

## IV.  CAUSE OF ACTION

The Complaint alleges fraud in the offer or sale of
securities by the Fraud Defendants (violations of Section
17(a) of the Securities Act), fraud in connection with the
purchase or sale of securities by the Fraud Defendants
(violations of Section 10(b) of the Exchange Act and Rule 10b-
5 thereunder) and fraud in the offer and sale of unregistered
securities by Defendants Peregrine, Allied, Grafton, Sigma and
Hillman (violations of Sections 5(a) and 5(c) of the
Securities Act).