








```
CAG    6/1/01    15:42
3:01-CV-00496   SEC V. PINNFUND USA, INC
*208*
*M.*
```

1  John J. Bartko, State Bar No. 37372
   Christopher J. Hunt, State Bar No. 88391
2  BARTKO, ZANKEL, TARRANT & MILLER
   A Professional Corporation
3  900 Front Street, Suite 300
   San Francisco, California 94111
4  Telephone: (415) 956-1900
   Facsimile: (415) 956-1152
5
   Attorneys for Proposed Intervenors
6  TOM FRAME, STAN FRIEDMAN, BRUCE MILLER
   ON BEHALF OF GREEN/FILLMORE PARTNERS,
7  DON SHARE, ALLEN STEPHENSON and RON VANDENBERGHE
8
9              UNITED STATES DISTRICT COURT
10             SOUTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  SECURITIES AND EXCHANGE COMMISSION, | No. 01-CV-0496 H (LAB) |
| 13       Plaintiff, | PROPOSED INTERVENORS' EX PARTE APPLICATION FOR ORDER |
| 14  v. | RE (1) INTERVENTION; (2) MODIFICATION OF |
| 15  PINNFUND USA, INC., PEREGRINE FUNDING, INC., ALLIED CAPITAL PARTNERS, GRAFTON PARTNERS, SIX SIGMA, LLC A/K/A 6 SIGMA, LLC, MICHAEL J. FANGHELLA, JAMES L. HILLMAN, RELIANCE HOLDINGS, LLC, KELLY COOK A/K/A KELLY JAYE A/K/A KELLY SPAGNOLA, | PRELIMINARY INJUNCTION RE DEFENDANT HILLMAN; AND (3) JOINDER IN RECEIVER'S MOTION TO WITHDRAW REFERENCE AND DISMISS BANKRUPTCY CASE |
| 20       Defendants. | Date:      June 1, 2001<br>Time:     10:00 a.m.<br>Courtroom: Hon. Marilyn L. Huff |

Filed By Fax & File



1816.000/244007.1

PROPOSED INTERVENORS' EX PARTE APPLICATION
Case No. 01-CV-0496 H (LAB)

MAY 30 2001 16:08                                  415 956 1152    PAGE.02

**EX PARTE APPLICATION**

The Proposed Intervenors[1] hereby apply to the Court ex parte for an order (1) allowing them to intervene in this matter, (2) modifying the preliminary injunction as to defendant Hillman so as to prevent him from further expenditure of attorneys' fees except upon noticed motion and prior approval of this Court, and (3) permitting them to join in the Receiver's pending motions to withdraw the reference and dismiss the bankruptcy case. On Tuesday, May 29, 2001, counsel for the Proposed Intervenors advised counsel for Mr. Hillman that such an ex parte request is being made to this Court. Declaration of John S. Lottier, ¶¶2-3. This Ex Parte Application has been rendered necessary by the actions of Mr. Hillman in the Oakland bankruptcy cases, especially during the period May 23 - May 25, 2001, as explained in the Declaration of James R. Stillman, also filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF EX PARTE APPLICATION**

**I.  INTRODUCTION**

> The primary purpose of allowing courts to establish receiverships in securities fraud actions is to prevent further dissipation of the assets of the defrauded investors. . . .

*SEC v. Wencke*, 783 2d 829, 837 n. 9 (9th Cir. 1986).

> The Court's primary concern at this stage of the proceedings is to ensure that sufficient funds exist to provide adequate compensation to investors wronged by fraud in the instant matter.

Memorandum Decision in Support of Preliminary Injunction Order and Orders: (1) Freezing Assets, (2) For Accounting, and (3) Prohibiting Destruction of Documents as to Defendants Kelly Cook and Reliance Holdings, LLC, filed May 4, 2001 ("May 4 Memorandum Decision").

At the outset, this Court was restrained in exercise of its broad authority to issue orders addressing this primary purpose and concern. However, discovery, this Court's subsequent findings and orders, and the recent and ongoing conduct of defendant James Hillman and his bankruptcy attorneys, have since made it plain that more is required.

---

[1] As identified in the caption, the Proposed Intervenors are Tom Frame, Stan Friedman, Bruce Miller on Behalf of Green/Fillmore Partners, Don Share, Allen Stephenson and Ron Vandenberg.

1.

These motions are brought on behalf of a group of victims of the Hillman-Fangella fraud, composed of the Proposed Intervenors: Tom Frame, Stan Friedman, Bruce Miller on behalf of Green/Fillmore Partners, Don Share, Allen Stephenson and Ron VandenBerghe. Each, either individually or on behalf of the entities they or members of their family represent, invested substantial monies in Allied Partners, Grafton Partners, or Six Sigma, L.L.C. (collectively, the "Partnerships"). They represent a total of $126 million in invested funds.[2]

Now, based upon the Court's Preliminary Injunction orders filed April 25, 2001 and Memorandum Decision filed April 30, 2001, it has become painfully clear that they are not investors but victims of a gigantic fraud perpetrated by Mr. Hillman and his long-time associate, Michael Fangella. Collectively, moving parties and other investors have been defrauded of more than $330 million invested in the Partnerships. The Proposed Intervenors believe that Mr. Hillman's predation on Partnership assets continues unabated: he is using the proceeds of this fraud (money which belongs to the investors) to finance an outrageously expensive legal strategy designed to obstruct efforts to promptly and efficiently identify and restrain those at fault and, where possible, collect restitution, damages and/or disgorgement. The fraud has continued for so long because of reckless efforts by Mr. Hillman to continue to raise money well after he had been specifically and expressly warned of the fraud by PricewaterhouseCoopers LLP ("PWC") in June of 1999. (April 30 Memorandum Decision at 8:8-20.) As a consequence, he thereafter collected for his personal benefit over $22 million. In the absence of an appropriate accounting, it must be presumed he is spending the proceeds of his own fraud (other people's money) to finance his lifestyle and expensive and wasteful scorched-earth legal strategy. The moving parties believe that approximately $243 million of the $330 million was raised after June of 1999, and that Hillman raised some $45 million even after he was forced to begin contributing his own funds to keep the scheme afloat, and therefore must have been <u>certain</u> of the fraud.

---

[2] As in any Ponzi scheme, fraudulent investors may be situated somewhat differently from one another. Typically, though all investors are paid from funds of later investors, early investors are paid more; some investors may be paid "finders' fees" or "commissions" for bringing in new investors; amounts of losses may vary significantly. Whatever these difference here, the Proposed Intervenors share a common goal: maximum recovery at the least cost (in time and money).

2.

The record of Hillman's ongoing misconduct is detailed both in the Second Report of Charles G. La Bella as Receiver for PinnFund and Related Entities, filed May 22, 2001 ("the Receiver's Second Report), and even more recently in the Declaration of James Stillman (the Proposed Intervenors' recently retained bankruptcy counsel) filed herewith. Those documents, in light of this Court's own April 25 Preliminary Injunction Orders and April 30 Memorandum Decision (as well as its May 4 Memorandum Decision) demonstrate the propriety -- indeed, necessity -- of intervention in these proceedings by the Proposed Intervenors.

Moving parties seek not only to join in the motions of the Receiver now before the Court, but also to have the Court modify the preliminary injunction in one critical respect, one which directly affects them: to bar Hillman's expenditure of funds (i.e., under §IV of the April 25, 2001 Preliminary Injunction Order) until and unless Hillman can establish, on noticed motion before this Court, that any funds he proposes to spend are not the product of this massive fraud. Given this Court's own determinations, *see* April 30, 2001 Memorandum Decision at 7:12-10:27; 12:1-13:5, the magnitude of the fraud, and Hillman's direct benefit (in an amount exceeding $22 million), this request is modest, balanced, consistent with the intent and purpose of the injunction, and entirely justified by the record.

Hillman violated the Court's temporary restraining order the day after its issuance by transferring $6 million to his attorneys. April 30, 2001 Memorandum at 12:20-25. It now clearly appears that this astonishingly brazen initial salvo was no aberration: it presaged the equally defiant (albeit slickly executed) recent behavior recounted in the Stillman Declaration. Hillman's ongoing machinations not only thwart the efficient -- and efficacious -- functioning of the receivership, they risk continued and massive dissipation of the funds of Hillman's victims, including moving parties.

Modification of the preliminary injunction to require that Hillman demonstrate that any more proposed expenditures are not the product of fraud does not deprive him of any right to counsel -- only of the ability to wield the defrauded investors' own stolen funds against them.

3.

## II. ARGUMENT

### A. Intervention is Proper and Should be Permitted.

Moving parties, as fraud victims of Hillman and his co-defendants, have direct and substantial property interests at stake in these proceedings. On the record before the Court, *mandatory* intervention under Rule 24(a)(2) is appropriate. An applicant qualifies for intervention *as of right upon satisfaction of three criteria: (1) the applicant must have an interest in the subject matter of the litigation; (2) absent intervention, "the disposition of the action may as a practical matter may impede the applicant's ability to protect that interest," and (3) existing parties to the action may not adequately represent the applicant's interest.* Rule 24(a)(2); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Rule 24 is to be construed liberally, and doubts resolved in favor of intervention. *United States v. Union Electric Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995). Finally, where a proposed intervenor advances a clear property interest, the case for mandatory intervention is likely to be strongest. *See N.L. Industries, Inc. v. Secretary of the Interior*, 777 F.2d 433, 435 (9th Cir. 1985); *see generally* 6 MOORE'S FEDERAL PRACTICE §24.03[2][a] at pp. 24-26 - 24-27 (3d ed. 1999).

Here there can be no question that the moving parties' investments are directly at stake in this Court's disposition of not only the action, but of the particular terms of its preliminary injunction orders concerning Hillman's ongoing expenditures of funds. Assessments under Rule 24(a)(2) are to be made flexibly, "guided primarily by practical and equitable considerations." *Donnelly v. Glickman*, 159 F.3d at 409.

On the record now before the Court and in view of the Court's previous determinations, entitlement to intervention under Rule 24(a)(2) seems clear.[3]

---

[3] Whether existing parties "may not adequately" represent a proposed intervenor's interest, considered an additional criterion under Rule 24(a)(2), imposes a minimal burden: "The Rule is satisfied if the applicant shows that the representation of his [or her] interests 'may be' inadequate, . . . ." *Trbovich v. United Mine Workers of America*, 404 U.S. 258, 538 n.10 (1972). Applicants are normally or presumptively the best judge of whether existing representation "may" be sufficient, and doubts are again resolved in favor intervention. *FSLIC v. Falls Chase Special Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

4.

*In the alternative, permissive intervention under Rule 24(b), is also appropriate.* It requires only that ". . . an applicant's claim or defense in the main action has a question of law or fact in common," and that the application be timely. Both criteria are satisfied. Permissive intervention is discretionary, but the factors favoring its grant here point in a single direction. First, commonality of claims and defenses is clear: the same funds stolen from proposed intervenors are the subject of the SEC's claims and sought remedies, including disgorgement and restitution. Second, no undue delay is threatened by intervention. The proceedings are early; the applicants have moved as quickly as circumstances would permit and in time for the Court's scheduled June 1 hearing; and the input of the defrauded investors themselves will add value to this litigation. *See Donnelly v. Glickman, supra,* 159 F.3d at 409-410; *see generally* 6 MOORE'S, *supra,* §§24.10 - 24.11.

For such reasons, defrauded investors, as well as claimants and objectors, are commonly made parties to SEC civil actions, including those involving a receiver. *See SEC v. Hardy,* 803 F.2d 1034 (9th Cir. 1986); *SEC v. Universal Financial,* 760 F.2d 1034 (9th Cir. 1985) ("specially appearing" investors).

The proposed intervention here pertains immediately and directly to protection against ongoing dissipation of the intervenors' funds by the party primarily responsible for having illegally extracted them in the first instance. Intervention should be allowed.

B. **The Preliminary Injunction As To Hillman Should Be Modified To Require That He Establish And The Court Determine In Advance That Any Proposed Expenditures Are From Funds Which Are Not The Product Of Fraud.**

As noted, Hillman's track record before this Court began with his violation of the Temporary Restraining Order the day after it issued by dispatching over $6 million to his attorneys. The April 30 and May 4 Memorandum Decisions made critical determinations with respect to Hillman's complicity in the Ponzi scheme which is the subject of this lawsuit. Hillman's likely personal benefit exceeds $22 million of the defrauded investors' funds. An asset freeze was imposed on him by the Court. April 25, 2001 Preliminary Injunction, ¶IV. One might have expected Hillman's conduct following issuance of this Court's Preliminary Injunction Orders

5.

and Memorandum Decisions to have been appropriately chastened (or at least reined in) thereafter, especially in judicial proceedings: to be scrupulously, painstakingly straightforward.

But one would be wrong. Hillman remains undaunted. Over the past few weeks, he has created an alarming record – partially documented in the Receiver's Second Report of May 22, 2001, amplified and updated by the Stillman Declaration – of new misconduct undertaken with a small battalion of bankruptcy attorneys. This documented behavior is subversive (and perhaps contumacious) of the terms of the Court's preliminary injunction requiring cooperation with the efforts of the Receiver to locate, pursue and gather assets and funds in order to be able to one day supply adequate compensation to the wronged investors. April 25, 2001 Preliminary Injunction, ¶V. It also poses the high risk that the wrongfully taken funds are themselves fueling Hillman's ongoing manipulations and wars against those he has defrauded. Moving parties propose a modest modification to the preliminary injunction to guard against that risk.

The Stillman Declaration makes it clear that Hillman is calculatedly playing to his advantage the splintering of judicial proceedings -- which he himself brought about -- involving the PinnFund scheme and its participants. The Oakland phalanx of his bankruptcy lawyers positions him not only as a "creditor" of PinnFund, but as its "major creditor," and otherwise thwarts the defrauded investors' -- and the Receiver's -- efforts on every front.

A summary list of a few of the recently enacted components of this cadre's strategy bespeaks both sophisticated stealth and careful advance planning:

- They have implemented a Chapter 7 strategy of trapping defrauded investors in proceedings, helmed by a non-lawyer Chapter 7 trustee, which deprive the defrauded investors even of minor procedural rights (such as forming an appropriate committee), Hillman Decl., ¶¶5-10, 13-14;

- They have thrown the general partner and manager of the Partnerships, Peregrine Funding (which Hillman himself controls), into a separate bankruptcy proceeding which (with the automatic stay of §362 of the Bankruptcy Code) even bars the investors from voting to

6.

remove Peregrine as the Partnerships' manager, when control of the Partnerships governs control of important claims;

- They have actively opposed any of the Oakland bankruptcy cases' conversion to Chapter 11, where suitable procedural protection are accorded, Stillman Decl., ¶12;

- They have strategized with counsel for the trustee on how to block any election which might permit the assertion of the defrauded investors' rights, even within the Chapter 7 cases;

- They have made good on this threat, stating an intention to block any election and asserting that the defrauded investors would not get any committee until Mr. Hillman himself thought the time was right, Stillman Decl., ¶16;

- They have -- Hillman himself has -- filed objections to the election of any committee, some of which actually assert that Hillman is a creditor and claimant against his own partnerships, with the right in the Chapter 7 cases he filed to compete against and even to prevail over the very investors he defrauded, Stillman Decl., ¶17;

- They have effectively taken the position in the bankruptcy proceedings that Hillman's victims are run of the mill limited partner investors and subordinate to Hillman's own claim to the remaining Partnership assets, Stillman Decl., ¶17;

- They have implemented each of the foregoing steps with very expensive and sophisticated bankruptcy counsel, and filed Hillman's objections with no attachment, quotation of or reference to any of this Court's orders and determinations set forth in its April 30 and May 4 Memorandum Decisions, Stillman Decl., ¶¶14, 17.

At the same time, another contingent of Hillman's lawyers creates for this Court a fictional picture of those same bankruptcy proceedings, starring Hillman as the Receiver's and investors' cooperative partner. The Receiver's Second Report spells out additional dismaying details of this process. It has been slow, wasteful and duplicative. It has had serious impact on proper discharge of the Receiver's responsibilities and on his ongoing efforts to marshal assets, to

7.

promptly and efficiently identify those at fault, and to collect restitution, damages or disgorgement where possible.

Devising and operating this accelerating game of judicial three-card monte has also been very expensive. Hillman has not stinted on his payments to the lawyers he needs to carry it out. It continues to be expensive. From Hillman's perspective, frenetically spending funds in this manner simultaneously accomplishes several goals: (1) it creates complexity, sows confusion and confounds both his victims and the Receiver; (2) it rapidly drains assets otherwise available to redress the wrongs he has committed; (3) it buys him valuable time -- at top dollar; and (4) it risks turning the defrauded investors' own stolen assets against them within federal judicial proceedings which presumably afford the best (or sole) prospect for their recovery.

Given Hillman's behavior to date, borne out by the earlier findings of the Court in its Preliminary Injunction Orders of April 25, 2001 and Memorandum Decisions of April 30 and May 4, there is no reason to assume or believe that these expenditures are made from untainted funds. The record supports every reason to assume and believe otherwise. In light of that record, the thin protections of the existing April 25th Preliminary Injunction Orders as to Hillman are insufficient. Paragraph IV provides only for *in camera* review by the magistrate judge with respect to "reasonable attorneys' fees."[4] The scope and rapidity of Mr. Hillman's sophisticated judicial whipsawing demonstrates that this putative safeguard is inadequate.

The Proposed Intervenors therefore request a modification of the Court's preliminary injunction, requiring Hillman to establish on noticed motion before this Court, and prior to making a proposed expenditure, that the funds to be used to make it are not in any respect a product of fraud. This modification is solidly grounded in the facts and amply warranted as necessary prophylaxis; the Court's legal authority to enter it has two distinct and sufficient sources.

---

[4] The entire pertinent text, following terms imposing the asset freeze on Hillman, is as follows: "Any questions concerning the reasonable attorneys' fees may be referred to the Magistrate Judge for determination *in camera*." April 25, 2001 Preliminary Injunction at § IV, p. 4, lines 7-8.

8.

First, federal courts have broad powers and "... enjoy wide discretion in fashioning relief and protective measures in SEC actions ...." *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1143 (9th Cir. 1996), *citing SEC v. American Principals Holding, Inc. (In re San Vicente Medical Partners Ltd.)*, 962 F.2d 1402, 1406 (9th Cir.), *cert. denied*, 506 U.S. 873 (1992). These equity powers are flexible, practical, and particularly fact-dependent. *See SEC v. Hardy*, *supra*, 803 F.2d at 1037-1038; *SEC v. Lincoln Thrift Association*, 577 F.2d 600, 601 & n.11, 608 (9th Cir. 1978). Use of summary procedures, for example, have repeatedly been held to come within district court authority. *SEC v. Hardy*, 803 F.2d at 1040; *SEC v. Wencke*, 783 F.2d 829, 836-38 (9th Cir. 1986); *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984). Summary procedures "avoid formalities that would slow down the resolution of disputes. This promotes judicial efficiency and reduces litigation costs to the receivership." *Wenke*, 783 F.2d at 837, n.9. What moving parties propose here accords with this same goal, yet affords Hillman ample procedural protection and does not deprive him of counsel – he need only establish that proposed expenditures are from untainted funds.

Second, district courts retain plenary power to modify the terms of their own preliminary injunctions at any time. *City of South Pasadena v. Volpe*, (C.D. Cal. 1976) 418 F.Supp. 854, 864 ("The Court ... has inherent power to modify a preliminary injunction."); *see also U.S. v. United Shoe Machinery Corp.* (1968) 391 U.S. 244, 252; 88 S.Ct. 1496; 20 L.Ed.2d 562 (Court must be willing to modify decree in order to insure accomplishment of intended result).

This Court's findings and Memorandum Decisions, in combination with the Receiver's Second Report and the Stillman Declaration, warrant entry of the requested modification, to be effective immediately. At minimum, and in the alternative, the Court should set an early hearing date and briefing schedule to have the matter heard on noticed motion and restrain any further application for the transfer of funds to Hillman's attorneys in the interim.

9.

C.  **Moving Parties Join In The Motions Of The Receiver.**

If the Court grants the motion to intervene, the Proposed Intervenors join in the motions of the Receiver (1) to withdraw the reference of the bankruptcy case to the district court, and (2) to dismiss the bankruptcy case. Both motions complement the relief sought here and appropriately address this Court's primary concern: "... to ensure that sufficient funds exist to provide adequate compensation to investors wronged by fraud...." May 4 Memorandum Decision at 8:2-3.

III.  **CONCLUSION**

For the foregoing reasons, the Proposed Intervenors' motions for intervention and for modification of the preliminary injunction should be granted.

DATED: May 29, 2001

BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation


By: _____
    John J. Bartko
    Attorneys for Proposed Intervenors
    TOM FRAME, STAN FRIEDMAN, BRUCE
    MILLER ON BEHALF OF GREEN/FILLMORE
    PARTNERS, DON SHARE, ALLEN
    STEPHENSON and RON VANDENBERGHE

## PROOF OF SERVICE (BY FEDERAL EXPRESS & FACSIMILE)

I, Beth K. McLaughlin, the undersigned, hereby certify and declare:

1. I am over the age of 18 years and am not a party to the within cause.

2. I am employed in the office of a member of the bar of this Court, at whose direction this service was made.

3. My business address is Bartko, Zankel, Tarrant & Miller, 900 Front Street, Suite 300, San Francisco, California 94111.

On May 30, 2001, I served the true copy of the attached document(s) titled exactly

- PROPOSED INTERVENORS' EX PARTE APPLICATION FOR ORDER RE (1) INTERVENTION; (2) MODIFICATION OF PRELIMINARY INJUNCTION RE DEFENDANT HILLMAN; AND (3) JOINDER IN RECEIVER'S MOTION TO WITHDRAW REFERENCE AND DISMISS BANKRUPTCY CASE

- DECLARATION OF JAMES R. STILLMAN IN SUPPORT OF PROPOSED INTERVENORS' EX PARTE APPLICATION

- DECLARATION OF JOHN S. LOTTIER IN SUPPORT OF PROPOSED INTERVENORS' EX PARTE APPLICATION FOR ORDER RE (1) INTERVENTION; (2) MODIFICATION OF PRELIMINARY INJUNCTION RE DEFENDANT HILLMAN; AND (3) JOINDER IN RECEIVER'S MOTION TO WITHDRAW REFERENCE AND DISMISS BANKRUPTCY CASE

on the interested parties in this action as follows:

__XX__  **BY FEDERAL EXPRESS:** I am readily familiar with my employer's practice for collection and processing of Federal Express courier service mail, and know that said Federal Express courier service mail is collected and deposited with a facility regularly maintained by Federal Express at San Francisco, California on the same day it is deposited in the interoffice mail. Following ordinary business practice, I placed for collection and delivery to Federal Express such envelope(s) at Bartko, Zankel, Tarrant & Miller, 900 Front Street, Suite 300, San Francisco, California 94111, addressed, sealed and charges prepaid, marked for next business day delivery as follows:

| | |
|---|---|
| John Patrick Boyl, Esq.<br>Assistant U.S. Trustee<br>Office of the U.S. Trustee<br>Department of Justice<br>402 West Broadway, Suite 600<br>San Diego, CA 92101 | Thomas M. Brown, Esq.<br>Pamela Naughton, Esq.<br>Sheppard, Mullin, Richter & Hampton, LLC<br>333 South Hope Street, 48th Floor<br>Los Angeles, CA 90071 |

1.

1816.000/244007.1

Case No. 01-CV-0496 H (LAB)

| | |
|---|---|
| Elizabeth J. Burnett, Esq.<br>Hahn & Burnett<br>501 West Broadway, Suite 1730<br>San Diego, CA 92101 | Mitchell B. Dubick, Esq.<br>Dysart & Dubick, LLP<br>701 B Street, Suite 1525<br>San Diego, CA 92101 |
| Mr. Knut Johnson<br>1010 Second Avenue, Suite 1010<br>San Diego, CA 92101 | Charles G. La Bella, Esq.<br>McKenna & Cuneo, L.L.P.<br>750 B Street<br>Suite 3300, Symphony Towers<br>San Diego, CA 92101 |
| Nicolas Morgan, Esq.<br>Thomas Zaccaro, Esq.<br>Securities and Exchange Commission<br>Pacific Regional Office<br>11th Floor<br>5670 Wilshire Boulevard<br>Los Angeles, CA 90036-3648 | Daniel C. Sigler, Esq.<br>Walsworth, Franklin, Bevins & McCall<br>One City Boulevard West<br>Fifth Floor<br>Orange, CA 92868 |
| Mr. Charles T. Spagnola<br>12453 Lewis Street, Suite 102<br>Garden Grove, CA 92640 | Mr. Tevis T. Thompson<br>P. O. Box 1110<br>Martinez, CA 94553 |
| Edward J. Tredinnick, Esq.<br>Pascoe & Rafton<br>1050 Northgate Drive, Suite 356<br>San Rafael, CA 94903 | |

__XX__ **BY FACSIMILE:** On May 30, 2001 from my employer's facsimile machine telephone number (415) 956-1152, I transmitted a copy of said document(s) to the following addressee(s) at the following number(s).

| | |
|---|---|
| Nicolas Morgan, Esq.<br>Thomas Zaccaro, Esq.<br>Securities and Exchange Commission<br>Pacific Regional Office<br>11th Floor<br>5670 Wilshire Boulevard<br>Los Angeles, CA 90036-3648<br>(323) 965-4513 (FAX) | Thomas M. Brown, Esq.<br>Pamela Naughton, Esq.<br>Sheppard, Mullin, Richter & Hampton, LLC<br>333 South Hope Street, 48th Floor<br>Los Angeles, CA 90071<br>(213) 620-1398 (FAX) |
| Charles G. La Bella, Esq.<br>McKenna & Cuneo, L.L.P.<br>750 B Street<br>Suite 3300, Symphony Towers<br>San Diego, CA 92101<br>(619) 595-5450 (FAX) | |

2.

1816.000/244007.1

Case No. 01-CV-0496 H (LAB)

1 | I declare under penalty of perjury under the laws of the United States of America
2 | that the foregoing is true and correct and that this declaration was executed on May 30, 2001 at
3 | San Francisco, California.

_____
Beth K. McLaughlin

3.