















CAG    8/9/01    9:28

3:01-CV-00496    SEC V. PINNFUND USA, INC

*303*

*OBJ.*

John J. Bartko, State Bar No. 37372
Christopher J. Hunt, State Bar No. 88391
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Intervenors
TOM FRAME, STAN FRIEDMAN, BRUCE MILLER
ON BEHALF OF GREEN/FILLMORE PARTNERS,
DON SHARE, ALLAN STEPHENSON and RONALD VANDENBERGHE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PINNFUND USA, INC., PEREGRINE FUNDING, INC., ALLIED CAPITAL PARTNERS, GRAFTON PARTNERS, SIX SIGMA, LLC A/K/A 6 SIGMA, LLC, MICHAEL J. FANGHELLA, JAMES L. HILLMAN, RELIANCE HOLDINGS, LLC, KELLY COOK A/K/A KELLY JAYE A/K/A KELLY SPAGNOLA,<br><br>Defendants. | No. 01-CV-0496 H (LAB)<br><br>**OBJECTION OF INTERVENORS TO MODIFICATION OF ASSET FREEZE AS TO DEFENDANT MICHAEL FANGHELLA FOR PAYMENT OF FANGHELLA'S ATTORNEY'S FEES**<br><br>Date: August 9, 2001<br>Time: 1:30 p.m.<br>Courtroom: 1<br>Before: Hon. Marilyn L. Huff |

## I. INTRODUCTION

Michael Fanghella was beneficiary of a vast Ponzi scheme. Intervenors[1] are victims of that fraud, having collectively invested some $126 million in Allied Capital Partners, Grafton Partners, or Six Sigma, LLC, the "Funding Entities" used to implement it.

---

[1] Tom Frame, Stan Friedman, Bruce Miller on behalf of Green/Fillmore Partners, Don Share, Allen Stephenson, and Ronald VandenBerghe. As noted in other papers filed with the Court, other clients represented by Intervenor's counsel who have not yet formally intervened bring the aggregate of Intervenors' and other clients' investments to more than $172,500,000, which is some 58% of the total invested capital, exclusive of that of Fanghella's co-defendant, James Hillman.

-1-

When the fraud came to light and the Securities and Exchange Commission filed this action and served a complaint on Mr. Fanghella, he fled. Through proceedings against Fanghella's co-defendant, James Hillman, the Court has since gained substantial familiarity with the essential components of this scheme and with many of its details.

Fanghella is now in this jurisdiction, a criminal defendant, and the subject of this Court's final judgment against him, ordering him to disgorge some $110 million "representing his ill-gotten gains from the conduct alleged in the Complaint." "When Michael Fanghella misappropriated investor monies, he became an involuntary trustee of those funds." Order Setting Evidentiary Hearing on Receiver's Motion to Disgorge Assets for Kelly Cook, Reliance Holdings, L.L.C., and Affiliated Persons, filed July 31, 2001 ("July 31 Order"). This Court should not countenance use of those misappropriated investor monies to pay for his defense.

By order of March 23, 2001, the Court issued a Temporary Restraining Order And Orders Freezing Assets; Appointing A Temporary Receiver; For Repatriation; Prohibiting The Destruction Of Documents; Granting Expedited Discovery; For Accountings; and Order To Show Cause Re Preliminary Injunction And Appointment Of A Permanent Receiver. Two days earlier, the Court had granted expedited discovery and prohibited all defendants from destroying documents or transferring money off-shore. On April 2, 2001, the Court issued a preliminary injunction against Fanghella and the co-defendant entity he controlled, PinnFund. The next day, the Court entered an Order to Show Cause against him, and on April 6, 2001, issued a contempt order and a bench warrant.

On May 25, 2001, the Court entered final judgment by default against Fanghella, including a permanent injunction and an order that he pay disgorgement in the amount of $109,015,989, "representing his ill-gotten gains from the conduct alleged in the Complaint, plus prejudgment interest thereon in the amount of $791,366.48 . . . ." May 25, 2001 Order at 3:24-25. Thus, the Court has finally adjudged his assets to be tainted.

Those assets, here and abroad, remain frozen. On application of the United States, the Government of Barbados imposed a freeze on Fanghella's assets there. On the morning of

Wednesday, August 1, 2001, Fanghella resurfaced in this jurisdiction and he surrendered himself to the United States Marshal's office pursuant to the Court's orders. The Court now has before it a request to partially lift the asset freeze in this case to pay Fanghella's selected criminal counsel.

The Court should not do so.

No law or principle authorizes using the victims' stolen funds to pay for Fanghella's criminal (or civil) defense:

> A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that defendant will be able to retain the attorney of his choice. A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended.

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626, 109 S.Ct. 2646, 2652-53, 105 L.Ed.2d 528 (1989). This holding and this principle suffice for decision: a final, preclusive judgment against Fanghella has determined that $110 million is "another person's money."

Second, even if the May 25, 2001 Order were not final and preclusive, before the Court contemplates *any* modification to the asset freeze against Fanghella, it should order a hearing pursuant to its power under *United States v. Nebbia*, 357 F.2d 303 (2d Cir. 1966) and its progeny to determine the source and status of Fanghella's assets and funds. (A similar such evidentiary hearing was ordered by this Court with respect to funds transferred from Fanghella to Kelly Cook and Reliance Holdings. *See* July 31 Order at 2:30-3:2.) The burden is on Fanghella to establish (1) that funds and assets subject to the asset freeze against him exceed the amount this Court determined to be ill-gotten gains, plus interest; and (2) that any such assets or funds in excess of that amount are "untainted by the fraud." *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) (district court refusal to release frozen funds to defendant in SEC enforcement action, absent defendant's demonstration of possession of assets untainted by fraud, *affirmed*).

This action was instituted by the SEC in accordance with its statutory mandate to preserve and recover the funds of the defrauded investors, not to multiply their injury by further depleting the available sources of recovery. This Court should treat Fanghella as any similarly

-3-

Cir. 1966) (permitting examination of a criminal defendant for purpose of ascertaining the source and status of proposed bail funds under Rule 46(e), Fed.R.Crim.P). In both this instance and the bail setting, "to release the funds, it [is] necessary to determine to whom they should be released." *United States v. Rubenstein*, 971 F.2d 288, 293 (9th Cir. 1992) (district court obligation to determine ownership of bail funds; error to abstain and send parties to state court for that purpose).

The "source and status" of *any* funds proposed to be released are critical determinations. They cannot be made without evidence. The showing which must be required from Fanghella is to prove that the funds proposed to be used for payment of criminal defense counsel are both sufficient and untainted -- not the product of any violation of the securities laws.

## III. CONCLUSION

There is a dispositive final judgment determining the amount of Fanghella's ill-gotten gains and ordering him to disgorge them; the Court should not modify the asset freeze to fund his defense counsel. In the alternative, until and unless he can prove rightful possession of untainted funds in excess of the specified restitution amount, maintenance of the asset freeze is still required.

DATED: August 8, 2001

        BARTKO, ZANKEL, TARRANT & MILLER
        A Professional Corporation

        By: _____
           Christopher J. Hunt
        Attorneys for Intervenors
        TOM FRAME, STAN FRIEDMAN, BRUCE
        MILLER ON BEHALF OF GREEN/FILLMORE
        PARTNERS, DON SHARE, ALLAN
        STEPHENSON and RONALD VANDENBERGHE

-7-

1816.000/247421.1    OBJECTION OF INTERVENORS TO MODIFICATION OF ASSET FREEZE
                Case No. 01-CV-0496 H (LAB)

AUG 08 2001 15:30         415 956 1152    PAGE.08

## PROOF OF SERVICE BY U.S. MAIL & FACSIMILE

I, Beth K. McLaughlin, the undersigned, hereby certify and declare:

1. I am over the age of 18 years and am not a party to the within cause.

2. I am employed in the office of a member of the bar of this Court, at whose direction this service was made.

3. My business address is Bartko, Zankel, Tarrant & Miller, 900 Front Street, Suite 300, San Francisco, California 94111.

On August 8, 2001, I served the true copy of the attached document(s) titled exactly

- **OBJECTION OF INTERVENORS TO MODIFICATION OF ASSET FREEZE AS TO DEFENDANT MICHAEL FANGHELLA FOR PAYMENT OF FANGHELLA'S ATTORNEY'S FEES**

on the interested parties in this action as follows:

__XX__ **BY MAIL:** I am readily familiar with my employer's mail collection and processing practices, know that said mail is collected and deposited with the United States Postal Service on the same day it is deposited in the interoffice mail, and know that postage thereon is fully prepaid. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope(s) at Bartko, Zankel, Tarrant & Miller, 900 Front Street, Suite 300, San Francisco, California 94111, addressed, sealed and charges prepaid as follows:

| | |
|---|---|
| John Patrick Boyl, Esq.<br>Assistant U.S. Trustee<br>Office of the U.S. Trustee<br>Department of Justice<br>402 West Broadway, Suite 600<br>San Diego, CA 92101 | Thomas M. Brown, Esq.<br>Pamela Naughton, Esq.<br>Sheppard, Mullin, Richter & Hampton, LLC<br>333 South Hope Street, 48th Floor<br>Los Angeles, CA 90071 |
| Elizabeth J. Burnett, Esq.<br>Hahn & Burnett<br>501 West Broadway, Suite 1730<br>San Diego, CA 92101 | Mitchell B. Dubick, Esq.<br>Dysart & Dubick, LLP<br>701 B Street, Suite 1525<br>San Diego, CA 92101 |
| Mr. Knut Johnson<br>1010 Second Avenue, Suite 1010<br>San Diego, CA 92101 | Charles G. La Bella, Esq.<br>McKenna & Cuneo, L.L.P.<br>750 B Street<br>Suite 3300, Symphony Towers<br>San Diego, CA 92101 |

1.

| | |
|---|---|
| Nicolas Morgan, Esq.<br>Thomas Zaccaro, Esq.<br>Securities and Exchange Commission<br>Pacific Regional Office<br>11th Floor<br>5670 Wilshire Boulevard<br>Los Angeles, CA 90036-3648 | Daniel C. Sigler, Esq.<br>Walsworth, Franklin, Bevins & McCall<br>One City Boulevard West<br>Fifth Floor<br>Orange, CA 92868 |
| Mr. Charles T. Spagnola<br>12453 Lewis Street, Suite 102<br>Garden Grove, CA 92640 | Eric A. Nyberg, Esq.<br>Kornfield, Paul & Nyberg<br>1999 Harrison Street, Suite 800<br>Oakland, CA 94612 |
| Edward J. Tredinnick, Esq.<br>Pascoe & Rafton<br>1050 Northgate Drive, Suite 356<br>San Rafael, CA 94903 | Securities and Exchange Commission<br>Pacific Regional Office<br>11th Floor<br>5670 Wilshire Boulevard<br>Los Angeles, CA 90036-3648 |
| Ezekiel E. Cortez, Esq.<br>1010 Second Avenue, Suite 1850<br>San Diego, CA 92101 | |

__XX__   **BY FACSIMILE:** On August 8, 2001 from my employer's facsimile machine telephone number (415) 956-1152, I transmitted a copy of said document(s) to the following addressee(s) at the following number(s).

| | |
|---|---|
| Ezekiel E. Cortez, Esq.<br>1010 Second Avenue, Suite 1850<br>San Diego, CA 92101<br>(619) 237-8052 (FAX) | Thomas M. Brown, Esq.<br>Pamela Naughton, Esq.<br>Sheppard, Mullin, Richter & Hampton, LLC<br>333 South Hope Street, 48th Floor<br>Los Angeles, CA 90071<br>(213) 620-1398 (FAX) |
| Charles G. La Bella, Esq.<br>McKenna & Cuneo, L.L.P.<br>750 B Street<br>Suite 3300, Symphony Towers<br>San Diego, CA 92101<br>(619) 595-5450 (FAX) | Nicolas Morgan, Esq.<br>Thomas Zaccaro, Esq.<br>Securities and Exchange Commission<br>Pacific Regional Office<br>11th Floor<br>5670 Wilshire Boulevard<br>Los Angeles, CA 90036-3648<br>(323) 965-4513 (FAX) |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 8, 2001 at San Francisco, California.

_____
Beth K. McLaughlin

2.

1816.000/247421.1

Case No. 01-CV-0496 H (LAB)

situated criminal defendant without legal recourse to funds to pay his chosen attorneys. Fanghella may be represented by the Federal Defender, or the Court may make an appointment of Mr. Fanghella's current criminal defense counsel, provided he is willing to serve in accordance with the statutory standards for panel counsel. *See* 18 U.S.C. §3006A.

II. **ARGUMENT**

    A.    All Tainted Assets Remain Subject To The Judgment and the Asset Freeze; There Is No Exception For Use Of Such Fund To Pay Attorneys.

Where there is authority to forfeit, seize or freeze assets obtained by fraud, the court has full authority to restrain their use for any purpose -- payment of counsel is no exception. Neither the Fifth nor Sixth Amendment proscribes this result. *Caplin & Drysdale, supra*, 491 U.S. at 627; *United States v. Monsanto*, 491 U.S. 600, 615, 109 S.Ct. 2657, 2666-2667, 105 L.Ed.2d 512 (1989) (companion case) (*held*, no Fifth or Sixth Amendment violation in the pre-trial restraint of assets upon probable cause showing that they are subject to forfeiture); *United States v. One Residential Property Located at 501 Rimini Road*, 733 F.Supp. 1382-86 (S.D.Cal. 1990). (*Caplin & Drysdale* and *Monsanto* apply to civil as well as criminal forfeitures; no Fifth or Sixth Amendment obstacle to banning use of civilly forfeitable assets to pay for attorneys' fees.)[2]

The court's authority to freeze assets in SEC enforcement proceedings is settled. *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980), and *Caplin & Drysdale* applies. *See SEC v. Quinn, supra*, 997 F.2d at 289; *accord, SEC v. Roor*, 1999 WL 553823, *3 (S.D.N.Y. 1999) ("a defendant in a case brought by the SEC may not use income derived from alleged violations of the securities laws to pay for legal counsel"), quoting *SEC v. Coates*, 1994 WL 455558, *3 (S.D.N.Y. 1994) ("a defendant is not entitled to foot his legal bill with funds that are tainted by his fraud").

---

[2] *See also, Commodity Futures Trading Comm'n v. Co. Petro Marketing Group, Inc.*, 800 F.2d 1279 (9th Cir. 1983) (pre-*Caplin & Drysdale* case -- counsel ordered to return fees paid from frozen assets where client violated commodity futures trading regulations); *United States v. Unit No. 7 and Unit No. 8*, 890 F.2d 82, 84 (8th Cir. 1989) (under *Caplin & Drysdale* and *Monsanto*, no Sixth Amendment violation in forfeiture of property to be used to pay counsel on probable cause showing); *United States v. Borromeo*, 954 F.2d 245, 249 (4th Cir. 1992) (forfeiture proceedings against funds from illegal conduct did not violate right to representation by paid counsel).

-4-

1816.000/247421.1    OBJECTION OF INTERVENORS TO MODIFICATION OF ASSET FREEZE
Case No. 01-CV-0496 H (LAB)
AUG 08 2001 15:29    415 956 1152    PAGE.05

1  The overriding purpose for maintenance of such asset freezes is to assure the availability of
2  sufficient assets to compensate victims of securities fraud. *SEC v. United Communications*, 899
3  F.Supp. 9, 11-12 (D.D.C. 1995).

> "Where the Government pursues this restitutionary end, the Government's interest in forfeiture is virtually indistinguishable from its interest in returning to a bank the proceeds of a bank robbery; and a forfeiture-defendant's claim of right to use such assets to hire an attorney, instead of having them returned to their rightful owners, is no more persuasive than a bank robber's similar claim."

*Caplin & Drysdale, supra*, 491 U.S. at 629-630, 109 S.Ct. at 2654.

Here there is not just a preliminary or "probable cause" showing of taint but a *final judgment* entered against Fanghella: some $110 million has been judicially determined to be ill-gotten gains. That judgment is a final, binding order with full preclusive effect until and unless Fanghella establishes sufficient cause to set it aside. *Morris v. Jones*, 329 U.S. 545, 550-551, 67 S.Ct. 451, 91 L.Ed. 488, 495 (1947); *see generally* 18 MOORE'S FEDERAL PRACTICE §131.30[3][d]. pp. 131-107 - 131-108 & n.84 (Matthew Bender 3d ed.).[3] The need to maintain intact the freeze on assets to assure recompense to the victims is thus both firmer and clearer than ever.

---

[3] It is worth noting, too, that once an accused violator of the securities laws is before the court, and the court has subject matter jurisdiction -- neither of which is in question here -- the court's asset freeze authority under 15 U.S.C. §§78u(d) and (e), and case law thereunder, extends to all the funds tainted by the fraud and which are in the possession of the defendant, not just those funds "traceable" to his or her personal participation or role. The underlying theory is, as in civil forfeiture cases, that title vests in tainted assets as an initial matter in the government, so as to assure ultimate recovery by the rightful owners. *See, Caplin, supra*, 491 U.S. at 628-629; *see, also, SEC v. Cherif*, 933 F.2d 403, 413-416 (7th Cir. 1991), *modified, reh'g denied*, 1991 U.S.App. LEXUS 11439 (7th Cir. June 7, 1991) (en banc), *cert. denied*, 112 S.Ct. 966 (1992) (neither criminal nor civil litigant has right to pay attorneys with money of another person); *United States v. One Residential Property, supra*, 733 F.Supp. at 1382-86 (same). Thus, a freeze against a named defendant's assets in an SEC enforcement action, whether forfeited, as in *Caplin*, or subject to pre-trial restraints upon a preliminary showing, as in *Monsanto*, is not subject to modification because the funds are to be used to pay the defendant's attorneys, nor because the funds in his possession are "traceable" to a co-defendant's or other wrongdoer's misconduct.

### B. At Minimum, Before Any Modification Of The Asset Freeze, The Court Should Hold An Evidentiary Hearing And Require Fanghella To Prove His Possession Of Assets Or Funds (1) In Excess Of The $110 Million Finally Adjudged As Ill-Gotten Gains And (2) Which Are Not Tainted By Fraud.

Here, as in *SEC v. Quinn, supra*, 997 F.2d 287 (7th Cir. 1993), the SEC sought and obtained a pretrial freeze of a defendant's assets in order to secure eventual restitution to victims of the scheme. Following "a preliminary showing that Quinn's assets can be traced to fraud," *id.* at 289, the district court refused to lift the freeze to permit Quinn to pay his counsel, after Quinn had failed despite invitation ". . . to demonstrate that he possesses assets untainted by the fraud and would not establish a fund in the amount of the SEC's estimate of his restitution obligation and demonstrate that the funds in excess had legitimate sources." The Seventh Circuit affirmed, relying on *Monsanto* and *Caplin*. There is more than a preliminary showing here -- there is a final judgment against Fanghella specifying that some $110 million are ill-gotten gains and subject to disgorgement.

If, however, the Court were nonetheless to contemplate some modification of the asset freeze, it should, as in *Quinn*, require from Fanghella a demonstration that all funds are assets from which he seeks to pay counsel are both sufficient and *untainted* -- that they are in excess of the $110 million specified in the Court's May 25, 2001 order, *and* that the excess is not the product of fraud. Only upon a showing that funds are ". . . from some other, *untainted* source," may the defendants whose assets are frozen have "a legitimate claim to those funds." *SEC v. Comcoa Ltd.*, 887 F.Supp. 1521, 1525 (S.D.Fla. 1995) (emphasis in original) (retainer agreement providing that funds in trust account become nonrefundable upon institution of SEC enforcement action void against public policy, subjecting defense trust account properly to freeze order and rendering transfer to counsel a contempt of court by counsel), *order aff'd on other grounds*, 70 F.3d 1191 (11th Cir. 1995). *See also FTC v. Noble Metals*, 67 F.3d 766, 775 (9th Cir. 1995) (if frozen assets are less than required to compensate victim investors, the court may deny request to use any of the funds for attorney's fees). The Court should require that showing by way of evidentiary hearing, as it did in its July 30 Order, and as authorized under *United States v. Nebbia*, 357 F.2d 303 (2d

-6-