















CAG   12/20/01   11:46
3:01-CV-00496   SEC V. PINNFUND USA, INC
*411*
*JGM.*

ORIGINAL

DEC 19 2001

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIF...

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

vs.

PINNFUND USA, INC., PEREGRINE
FUNDING, INC., ALLIED CAPITAL
PARTNERS, GRAFTON PARTNERS, SIX
SIGMA, LLC A/K/A 6 SIGMA, LLC,
MICHAEL J. FANGHELLA, JAMES L.
HILLMAN, RELIANCE HOLDINGS, LLC,
and KELLY COOK A/K/A KELLY JAYE
A/K/A KELLY SPAGNOLA,

Defendants.

Case No. 01 CV 0496 H (LAB)

**FINAL JUDGMENT OF
PERMANENT INJUNCTION
AND OTHER EQUITABLE AND
LEGAL RELIEF AGAINST
DEFENDANT JAMES L.
HILLMAN**



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Securities and Exchange Commission ("Commission"),

having filed and served upon Defendant James L. Hillman ("Hillman") a

Summons and Complaint in this matter and Hillman having admitted service upon

him of the Summons and Complaint in this action and the jurisdiction of this Court

over him and over the subject matter of this action; having been fully advised and

informed of his rights to a judicial determination of this matter; having waived the

entry of findings of fact and conclusions of law as provided by Rule 52 of the

Federal Rules of Civil Procedure; having consented to the entry of this Final

411

1  Judgment of Permanent Injunction and Other Equitable and Legal Relief Against

2  Defendant James L. Hillman ("Judgment") without admitting or denying the

3  allegations in the Complaint, except as specifically set forth in the Consent of

4  Defendant James L. Hillman to Entry of Judgment of Permanent Injunction And

5  Other Equitable And Legal Relief ("Consent");  and it appearing that no notice of

6  hearing upon the entry of this  Judgment being necessary; and the Court being

7  fully advised in the premises, and there being no just reason for delay:

8  I.

9  IT IS ORDERED, ADJUDGED & DECREED that Hillman and his officers,

10  agents, servants, employees, attorneys, and all persons in active concert or

11  participation with any of them, who receive actual notice of this Judgment, by

12  personal service or otherwise, and each of them, are permanently restrained and

13  enjoined from, directly or indirectly:

14      A. making use of any means or instruments of transportation or
15  communication in interstate commerce or of the mails to sell
   the securities of any issuer, through the use or medium of any
   prospectus or otherwise, unless and until a registration
16  statement is in effect as to such securities;

17      B. carrying or causing to be carried through the mails or in
   interstate commerce, by any means or instruments of
18  transportation, for the purpose of sale or for delivery after sale,
   the securities of any issuer, unless and until a registration
19  statement is in effect as to such securities; and

20      C. making use of any means or instruments of transportation or
   communication in interstate commerce or of the mails to offer
21  to sell or offer to buy, through the use or medium of any
   prospectus or otherwise, the securities of any issuer, unless
22  and until a registration statement has been filed with the
   Commission as to such securities, or while a registration
23  statement has been filed with the Commission as to such
   securities, or while a registration statement as to such
24  securities is the subject of a refusal order or stop order or
   (prior to the effective date of the registration statement) any
25  public proceeding or examination under Section 8 of the
   Securities Act, 15 U.S.C. § 77h;

26
   in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) &
27
   77e(c); provided, however, that nothing in this Judgment shall apply to any

28

- 2 -

security or transaction which is exempt from the provisions of Section 5 of the Securities Act, 15 U.S.C. § 77e.

## II.

IT FURTHER IS ORDERED, ADJUDGED AND DECREED that Hillman and his agents, servants, employees, and all persons in active concert or participation with any of them, who receive actual notice of this Judgment by personal service or otherwise, and each of them, are permanently restrained and enjoined from, directly or indirectly, in the offer or sale of the securities of any issuer, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails:

A.   employing any device, scheme or artifice to defraud;

B.   obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

C.   engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser;

in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

## III.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Hillman and his agents, servants, employees, and all persons in active concert or participation with any of them, who receive actual notice of this Judgment by personal service or otherwise, and each of them, are permanently restrained and enjoined from, directly or indirectly, in connection with the purchase or sale of any security, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

A.   employing any device, scheme, or artifice to defraud;

B.   making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

01 CV 0496 H (LAB)

C.    engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;

in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### IV.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Hillman shall provide all documents in his possession, custody or control to the Commission and disclose under oath all information with respect to his activities and the activities of others about which the Commission or its staff may inquire or request. Such production of documents and disclosure of information by Hillman shall be made upon reasonable notice in writing and without service of a subpoena and subject only to the good faith assertion of any privileges recognizable pursuant to the provisions of Rule 501 of the Federal Rules of Evidence or the United States Constitution and amendments thereto. Failure to comply with the foregoing will subject Hillman to the remedies and sanctions set forth in Rule 37 of the Federal Rules of Civil Procedure and all other available remedies.

### V.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Hillman and shall disgorge $67,749,192.39, representing his proceeds from the conduct alleged in the Commission's First Amended Complaint, plus prejudgment interest. Hillman's disgorgement obligation shall be deemed satisfied upon Hillman's full performance of the material terms and conditions of the settlement agreement dated December 3, 2001 by and among Charles G. La Bella, solely in his capacity as the court-appointed receiver and the responsible natural person of PinnFund USA, Inc. ("PinnFund"); Richard M Kipperman, solely in his capacity as the Chapter 7 trustee for Allied Capital Partners, L.P., Grafton Partners, L.P., Six Sigma, LLC, a.k.a. 6 Sigma, LLC and Peregrine Funding Inc. (the "Trustee");

1 Ronald G. VandenBerghe, Bruce Miller and Thomas Frame, solely in their

2 capacity as the anticipated class representatives, and Ardanz Associates Ltd.;

3 James L. Hillman and Freema Hillman (the "Settlement Agreement"), a copy of

4 which is attached hereto as Exhibit A.   Any disgorgement paid by Hillman

5 pursuant to the Settlement Agreement shall be transferred to an escrow account,

6 jointly held by the Receiver and the Trustee (the "Escrow Account").  Any

7 distributions from the Escrow Account shall be subject to the Court's approval

8 upon an application filed by the Commission within sixty days from entry of this

9 Judgment.

10                                        **VI.**

11            IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

12 Defendant Hillman is assessed, and shall pay to the Commission for delivery to

13 the United States Treasury, a civil penalty in the amount of $110,000 pursuant to

14 Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the

15 Exchange Act, 15 U.S.C. § 78(u)(d)(3).  Hillman shall pay the penalty within three

16 years from the date this Judgment is entered.  Payment shall be made by

17 cashier's check, certified check or postal money order made payable to the

18 United States Treasury, and shall be transmitted to the Comptroller, Securities

19 and Exchange Commission, Operations Center, 6432 General Green Way, Stop

20 0-3, Alexandria, Virginia 22312, under cover of a letter that identifies the

21 defendant, the name and case number of this litigation and the name of the Court.

22 A copy of the letter and the check or money order shall be simultaneously

23 transmitted to counsel for the Commission at its Los Angeles office located at

24 5670 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90036.

25                                        **VII.**

26            IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

27 Hillman's payment of disgorgement to the Receiver and/or the Trustee, or any

28 other actions taken by him to perform the material terms and Conditions of the

1  Settlement Agreement, in compliance with paragraph V of this Judgment, shall

2  not be deemed a violation of the freeze placed on his assets pursuant to Parts VI

3  and IX of the Preliminary Injunction Order and Orders:  (1) Freezing Assets and

4  (2) Prohibiting Destruction of Documents as to Defendants James Hillman,

5  Peregrine Funding, Inc., Allied Capital Partners, Grafton Partners, Six Sigma

6  LLC, issued by this Court on April 25, 2001 (the "Asset Freeze").  The Asset

7  Freeze shall otherwise remain in full force and effect until such time as the court-

8  appointed Receiver or the Trustee has provided notice to the Court and to all

9  counsel of record that Hillman has fully performed the material terms and

10 conditions of Paragraphs 3(a) and 3(b) of the Settlement Agreement concerning

11 the Transfer of Assets, except (1) that Account No. 01-005956 at Summit Bank in

12 the name of Freema Hillman shall be unfrozen as of the entry of this Judgment;

13 and (2) as provided in Part VIII of this Judgment.

14                                                       VIII.

15              IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

16 Asset Freeze on the real property located at 83 Castle Park Way, Oakland, CA

17 94611 (the "Real Property"), owned in the name of James and Freema Hillman,

18 shall remain in full force and effect until such time as Hillman pays in full the civil

19 money penalty ordered by Part VI of the Judgment, except that, notwithstanding

20 the continuation of the Asset Freeze, (1) Hillman's counsel, Sheppard Mullin

21 Richter & Hampton LLC ("SMRH"), may record a trust deed on the Real Property,

22 subordinate to the Commission's judgment lien, to secure the payment of

23 attorneys' fees; and (2) Hillman may refinance or sell the Real Property, subject

24 to the Commission's judgment lien and any trust deed recorded by SMRH, upon

25 ten days' notice to the Commission, SMRH and the Court.

26                                                        IX.

27              IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

28 within ten days from the date of this Judgment, Hillman shall transfer to the

Receiver and/or the Trustee all assets, funds, and other property that is presently held in foreign locations in Hillman's name, or for his benefit or under his control, or over which Hillman exercises actual investment or other authority, including signatory authority;

## X.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the provisions of the Consent filed concurrently with this Judgment are incorporated herein with the same force and effect as if fully set forth herein and that Hillman shall comply with the Consent.

## XI.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court shall retain jurisdiction over this action to implement and enforce the terms of the Judgment and other decrees that may be entered herein and to grant such other relief as the Court may deem necessary and just.

## XII.

There being no just reason for delay, the Clerk of the Court is hereby directed, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter this Judgment forthwith.

DATED:     December 19, 2001

MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE

- 7 -

# PROOF OF SERVICE BY U.S. MAIL

I am over the age of 18 years and not a party to this action.  My business address is:

[X]   U.S. SECURITIES AND EXCHANGE COMMISSION, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036.

Telephone: (323) 965-3998 Fax: (323) 965-3908

On December 18, 2001, I served the document entitled **FINAL JUDGMENT OF PERMANENT INJUNCTION AND OTHER EQUITABLE AND LEGAL RELIEF AGAINST DEFENDANT JAMES L. HILLMAN** upon the parties to this action addressed as stated on the attached service list:

[X]   **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ]   **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ]   **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]   **HAND DELIVERY:** I caused to be personally delivered each such envelope by hand to the office of the addressee in the attached service list.

[ ]   **FEDERAL EXPRESS:** By placing in sealed envelope(s) designated by Federal Express with delivery fees paid or provided for, which I deposited in a facility regularly maintained by Federal Express or delivered to a Federal Express courier, at Los Angeles, California.

[ ]   **FAX (BY AGREEMENT ONLY):** By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

[X]   **(Federal)** I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.  I declare under penalty of perjury that the foregoing is true and correct.

Date: December 18, 2001

*Magnolia M. Marcelo*
MAGNOLIA M. MARCELO

**Exhibit A**

## SETTLEMENT AGREEMENT

This settlement agreement (this "Agreement") is dated as of December 3, 2001 by and among Charles G. La Bella ("Receiver"), solely in his capacity as the court-appointed receiver and the responsible natural person of PinnFund USA, Inc. ("PinnFund"); Richard M Kipperman ("Trustee"), solely in his capacity as the Chapter 7 trustee for Allied Capital Partners, L.P. ("Allied"), Grafton Partners, L.P. ("Grafton"), and Six Sigma, LLC, a.k.a. 6 Sigma, LLC ("6 Sigma") (Allied, Grafton and 6 Sigma will be collectively referred to hereinafter as the "Funding Entities"), and Peregrine Funding Inc. ("Peregrine"); Ronald G. VandenBerghe, Bruce Miller and Thomas Frame, solely in their capacity as the anticipated class representatives (each an "Anticipated Class Representative"), and Ardantz Associates Limited Partnership (together with the Anticipated Class Representatives, the "Intervenors"); (collectively, the "Settling Parties"); James L. Hillman ("Hillman") and Freema Hillman (collectively with the Settling Parties, the "Parties").

## RECITALS

WHEREAS, on March 20, 2001 the Securities and Exchange Commission (the "SEC") filed a complaint for violation of the federal securities laws, commencing Case No. 01CV0496-H (LAB) (the "SEC Action"), in United States District Court for the Southern District of California (the "District Court") against PinnFund, Michael J. Fanghella, Hillman, Peregrine, a corporation that Hillman and/or Freema Hillman wholly own, and the Funding Entities, which Peregrine controls and/or manages, and certain others (collectively, the "SEC Action Defendants");

WHEREAS, on March 23, 2001, the SEC sought and obtained a Temporary Restraining Order ("TRO") against the SEC Action Defendants, and pursuant to the TRO, the Receiver was appointed the temporary receiver of PinnFund, its subsidiaries, affiliates and any related entity, with full powers of an equity receiver;

WHEREAS, on April 2, 2001, the District Court entered the Stipulation and Preliminary Injunction Order ("Preliminary Injunction") against PinnFund, and pursuant to the Preliminary Injunction, the District Court confirmed the appointment of the Receiver as the permanent receiver of PinnFund and its subsidiaries, affiliates and any related entities;

WHEREAS on April 2, 2001, Hillman caused Peregrine to commence on behalf of the Funding Entities an involuntary petition under Chapter 7 of the Bankruptcy Code against PinnFund in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court"), and later that same day, at the direction of Hillman, Peregrine and each of the Funding Entities (collectively, the "Affiliated Entities") filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California;

WHEREAS, on April 27, 2001, the Bankruptcy Court entered an Order for Relief against PinnFund under Chapter 7 of the Bankruptcy Code and, also, on April 27, 2001, the District

Court entered an order expanding the Receiver's responsibilities to act as the responsible natural person of PinnFund;

WHEREAS, on April 30, 2001, upon application by PinnFund, the Bankruptcy Court converted PinnFund's Chapter 7 case to one under Chapter 11 of the Bankruptcy Code, and since that time, PinnFund has been operating as a debtor in possession in accordance with sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, on June 12, 2001, the SEC filed two motions with the United States Bankruptcy Court for the Northern District of California in connection with Peregrine's and the Funding Entities' bankruptcy cases ((i) a motion to withdraw the reference to the District Court for the Northern District of California; and (ii) a motion to transfer the venue of the bankruptcy cases to the District Court), and on or about August 26, 2001, Judge Conti, sitting in the District Court for the Northern District of California, granted both the motion to withdraw the reference and the motion to transfer the venue of the bankruptcy cases to the District Court;

WHEREAS, on or about September 17, 2001, the Trustee was appointed the Chapter 7 trustee for Peregrine and each of the Funding Entities by the Office of the United States Trustee for the Southern District of California;

WHEREAS, on October 3, 2001, the District Court referred the bankruptcy cases of Peregrine and the Funding Entities to the Bankruptcy Court;

WHEREAS, on November 29, 2001, the Anticipated Class Representatives filed a class action lawsuit against Hillman entitled Frame et. al. v. Hillman, Case No. 01CV 2193 IEG (CGA) (the "Investor Action") along with a notice that the case is related to the SEC Action pending before the District Court Chief Judge, Honorable Marilyn Huff;

WHEREAS, the Anticipated Class Representatives have requested appointment as the lead plaintiffs, this appointment cannot be certified for at least sixty (60) days; Nevertheless, as the presumed most adequate lead plaintiffs pursuant to section 77z-1(a)(3)(B)(III) and 78u-4(a)(3)(B)(III) in the Investor Action, the Anticipated Class Representatives endorse this Agreement in their capacity as the presumed most adequate lead plaintiffs in the Investor Action, given the pending trial date set for the SEC Action;

WHEREAS, if this Agreement is approved by the District Court, the Intervenors and all other investors of the Funding Entities represented by Bartko, Zankel, Tarrant & Miller will withdraw as intervenors in the SEC Action and will support the approval of this Agreement as fair and adequate to the plaintiffs in the Investor Action if a class action is certified by the District Court in the Investor Action;

WHEREAS, Peregrine and the Funding Entities anticipate a limited withdrawal of the reference from the Bankruptcy Court to the District Court so that this Agreement may be approved by the District Court in each such entity's bankruptcy cases;

WHEREAS, Hillman believes that he will significantly benefit under this Agreement;

586157v10

WHEREAS, the Settling Parties wish to settle all outstanding disputes among them arising prior to the Effective Date of this Agreement;

NOW, THEREFORE, in consideration of the mutual promises made in this Agreement, the Settling Parties hereby agree as follows:

1.   Consent Judgment.  In settlement of the SEC Action, Hillman and the SEC shall enter into a Consent Judgment substantially in the form attached hereto as Exhibit 1. The Consent Judgment shall be entered contemporaneously with the execution of this Agreement, but in no event later than December 14, 2001.

2.   Collection Rights.  The Consent Judgment shall provide that the disgorgement collection rights, other than the rights to enforce the injunctions and any penalties contained assigned therein, be assigned to the Trustee and the Receiver.

3.   Transfer of Assets.

(a)   Generally.  Upon the Effective Date, Hillman agrees to, at the option of and in the manner jointly requested by the Receiver and the Trustee in their sole and absolute discretion and pursuant to documentation prepared by the Trustee, voluntarily disgorge, grant, assign, transfer, and deliver to PinnFund and Peregrine and/or the Funding Entities, as appropriate, his entire right, title, and interest in any and all funds, assets, tangible, intangible, real and personal property, including but not limited to, yachts, vehicles, jewelry (with a total value exceeding $5,000 and/or any individual item of jewelry with a value exceeding $2,500), Tax Refunds and Tax Benefits (as defined in Schedule F attached hereto) and other property, wherever located in the world and whether or not specifically referred to in this Agreement, under the ownership or control of Hillman or to which Hillman holds any right, title or interest in prior to the Effective Date, including, without limitation, all property identified on Schedule A attached hereto (the "Bank and Trust Assets"), and all property identified on Schedule B attached hereto (the "Investment Assets"), except as specifically set forth in Paragraph 4 below (such funds, assets, real and personal property, yachts, vehicles, jewelry, Tax Refunds, Tax Benefits, the Bank and Trust Assets, the Investment Assets and such other property are collectively henceforth and herein referred to as the "Assets"); provided, however, that neither the Receiver, the Trustee, PinnFund, Peregrine, nor the Funding Entities shall assume any liability or claim associated with the Assets that have accrued on or before the Effective Date, except the Assumed Liabilities (as defined in Paragraph 6 below and as identified in Schedule C attached hereto). Such Assets shall include all community property assets, assets held in trusts, and assets held in the name of others in which Hillman holds any right, title or interest, whether vested or contingent. Hillman's obligation to deliver and/or legally transfer Assets continues in the event that any assets in existence at the time of this Agreement and not disclosed by Hillman in connection therewith are subsequently located by the Parties. Hillman shall use best efforts to take any and all actions necessary to effectuate the transfer of the Assets to PinnFund and Peregrine and/or the Funding Entities; provided, however, (i) to the extent the Receiver and the Trustee do not request the immediate legal transfer of the Assets, the Receiver and the Trustee shall have equitable title to such Assets and Hillman shall assign to the Receiver and/or the Trustee the proceeds from any income stream or cash flow generated by or proceeds from the liquidation of any Asset not legally transferred, and (ii) upon the subsequent request of the

586157v10

Receiver and/or the Trustee, Hillman shall legally transfer any Asset to the Receiver and/or the Trustee. Hillman agrees to execute and deliver all documents necessary to effectuate the transfer of the Assets. Notwithstanding anything in this Agreement to the contrary, the Trustee shall have the absolute right, in his sole discretion, at any time to decline to accept the delivery from Hillman of any of the Assets, and in the event of any such rejection, such rejected Assets shall be deemed to have never been transferred to PinnFund, Peregrine, and/or the Funding Entities pursuant to this Agreement and Hillman acknowledges and agrees that title to such rejected Assets shall remain in his possession.

(b)   JAFRE Trust.   With respect to the JAFRE Trust, Hillman and Freema Hillman shall execute and deliver to the Trustee all documents necessary and appropriate to cause the transfer of Assets held by the JAFRE Trust, including, but not limited to, moneys held at City National Bank, and shall cause any other beneficiaries of the JAFRE Trust to execute the same.   Such documents may include, but are not limited to, assignments, stipulated orders, beneficiaries' instructions, and transfer information.   Hillman and Freema Hillman shall otherwise cooperate and act upon the direction of the Receiver and/or Trustee in their respective liquidation of this amount to give the Receiver and/or the Trustee the greatest equitable and/or legal interest in the JAFRE Trust. Hillman and Freema Hillman agree to use best efforts to cause any other beneficiaries of the JAFRE Trust to cooperate and act upon the direction of the Receiver and/or the Trustee with respect to the JAFRE Trust.

4.   Retained Assets.   Upon Hillman's compliance with all of the requirements of Paragraph 3 hereof, including but not limited to (i) the execution of all documentation requested by the Receiver and/or the Trustee; and (ii) the transfer of all moneys, including the moneys in the JAFRE Trust, pursuant to the instructions of the Receiver and/or the Trustee, Hillman and Freema Hillman shall be allowed to retain the following assets ("Retained Assets"): (i) their interest in their personal residence located in Oakland, California, (ii) certain personal property in the form of clothing, personal effects, jewelry (with a total value not to exceed $5,000 and the value of any individual item of jewelry not to exceed $2,500), household goods and furnishings (with a total value not to exceed $35,000), (iii) his 1993 Ford Explorer, (iv) his 1996 Volvo Sedan, (v) his interest in the James Hillman/Peregrine Defined Benefit Plan ("Defined Benefit Plan") (subject to Paragraph 10 hereof), and (vi) his interest as an heir of the estate of Bertha Hillman (the "Estate"); provided, however, that Hillman and Freema Hillman shall be entitled to retain assets attributable to their interest as heirs of the Estate, but only to the extent (A) the total value of such interest Hillman and Freema Hillman are entitled to receive does not exceed $180,000, and (B) Hillman and Freema Hillman prove that the origin of the assets in the Estate that they are entitled to retain under this Agreement are independent of any amounts received either directly or indirectly from Hillman, PinnFund, Peregrine and/or the Funding Entities, except as it relates to payments as an investor in the Funding Entities who deposited separate and legal property. The asset freeze pursuant to the Consent Judgment shall remain in place and be effective until the Trustee confirms compliance with Paragraph 3 above. With respect to the Defined Benefit Plan, the Trustee and/or the Receiver shall terminate the Defined Benefit Plan in accordance with applicable law and make distributions to the participants in the Defined Benefit Plan in accordance with the terms thereof and applicable law, pursuant to this Agreement, subject to Paragraph 10 hereof.

586157v10

5.    Allocation. The Assets shall be allocated between PinnFund, Peregrine and the Funding Entities in accordance with the letter agreement attached hereto as Exhibit 2 and incorporated herein.

6.    Assumed Liabilities. None of the liabilities or claims associated with the Assets that have accrued on or before the Effective Date shall be assumed by PinnFund, Peregrine and/or the Funding Entities; provided, however, notwithstanding the foregoing, the liabilities set forth in Schedule C attached hereto (the "Assumed Liabilities") shall be assumed and paid by Peregrine, and/or the Funding Entities, as appropriate. In addition, Peregrine and/or the Funding Entities shall be solely responsible for any liabilities associated with the Assets accruing after the Effective Date; provided, however, such liabilities shall in no event exceed the net value of the Assets legally transferred to Peregrine and/or the Funding Entities. Such Assumed Liabilities shall be classified as administrative expenses due from Peregrine and/or the Funding Entities, as appropriate.

7.    Freema Hillman's Interest in Assets. Upon the Effective Date, Freema Hillman shall release any right of ownership (including any interest as a beneficiary of a trust) she may have in Assets held in either joint tenancy, as tenants in common, and/or as community property with Hillman. Freema Hillman shall be allowed to retain any and all separate property as set forth in Schedule E attached hereto, subject however, to substantiation that (i) her interest in the 1.4 acres of unimproved property in Pleasanton, California was acquired with her separate property, (ii) both (A) the origin of the assets in the Estate that Freema Hillman is entitled to retain under this Agreement is independent of any amounts received either directly or indirectly from Hillman, PinnFund, Peregrine and/or the Funding Entities, except as it relates to payments as an investor in the Funding Entities who deposited separate and legal property, and (B) the total value Hillman and Freema Hillman together may receive from the Estate does not exceed $180,000.

8.    Assignment of Tax Refunds and Tax Benefits.

   a.    Assignment of Tax Refunds.

      (i)    Hillman hereby assigns and transfers to the Trustee his full right, title, and interest in any and all Tax Refunds (as defined in Schedule F attached hereto) which he may receive or to which he is entitled, including the right to recover any Tax Refunds, as set forth in Paragraph 8(c) below.

      (ii)    With respect to any Tax Refund Hillman has applied for but not received as of the Effective Date, Hillman shall notify the Trustee immediately upon receipt of such Tax Refund (or upon receipt of any notice of denial of the same), and within 24 hours of receiving instructions from the Trustee, shall transfer such Tax Refund as directed by the Trustee.

      (iii)    To the extent permissible by law, any Tax Return filed after the Effective Date shall direct any Tax Refund applied for thereunder to be paid by electronic transfer of funds to an account or accounts established by the Trustee. In the event such request is not permissible by law, Hillman shall notify the Trustee immediately upon the receipt of any

586157v10

Tax Refund, and within 24 hours of receiving instructions from the Trustee shall transfer such Tax Refund as directed by the Trustee. Hillman agrees, if necessary, to cooperate (including being a signatory on) any account established by the Trustee for the receipt of Tax Refunds; provided, however, that in no event shall Hillman (A) have the right to individually withdraw funds from such account; or (B) have any equitable interest whatsoever in such account. In addition, at the Trustee's request and sole discretion, Hillman shall file with the Internal Revenue Service ("IRS") a Form 2848 Power of Attorney (and any corresponding forms under state or local law) directing the IRS or other Tax authority to issue any Tax Refund directly to the Trustee.

      b.   <u>Payment of Tax Benefits</u>. Hillman hereby agrees to pay to the Trustee any Tax Benefits (as defined in Schedule F attached hereto) he realizes through and including his 2008 taxable year.

      c.   <u>Procedure</u>.

      (i)   Hillman shall prepare or cause to be prepared and file or cause to be filed any Tax Return (as defined in Schedule F attached hereto) for any taxable year through and including his 2008 taxable year in the form and manner reasonably requested by the Trustee to maximize the Tax Refund claimed on or Tax Benefit attributable to such Tax Return. For purposes of the prior sentence, the Trustee shall be deemed to have reasonably requested a Tax Return to include an item of deduction, loss, calculation, or any other position if (i) either (A) both (I) there is substantial authority for the treatment of such item on such Tax Return and (II) the Trustee reasonably believes that such tax treatment of such item is more likely than not the proper tax treatment (which reasonable belief may be based on any representation made by Hillman to the Trustee as of the Effective Date insofar as the facts set forth in such representation are necessary to such Tax treatment of such item); (ii) such item is not attributable to a "tax shelter" within the meaning of section 6662 of the Internal Revenue Code of 1986, as amended (the "Code"), and the treasury regulations promulgated thereunder, and both (A) the Trustee has caused all relevant facts affecting the item's tax treatment to be adequately disclosed in the Tax Return or in a statement attached to the Tax Return (within the meaning of Code section 6662(d)(2)(B)(ii)(I)); and (B) there is a "reasonable basis" (as such term is defined in Code section 6662) for such position; (iii) such position will not subject Hillman or Freema Hillman to any penalty under any provision of applicable Tax law other than Code section 6662 (including without limitation any amendment of Code section 6662 as in effect on the Effective Date), other than penalties assessed as a result of any representation made by Hillman to the Trustee as of Effective Date being incorrect; and (iv) such position is consistent with the terms and conditions of this Agreement. Within a reasonable period of time after the close of a taxable year, but in no event less than 90 days prior to the date by which a Tax Return is required to be filed for such taxable year (including extensions of time for filing such Tax Return), Hillman shall provide the Trustee with all information which may be necessary to complete any such requested Tax Return. Hillman shall be reimbursed any reasonable costs he incurs in complying with the Trustee's requests. If Hillman disagrees with any Tax Return prepared by the Trustee, or any position thereon reasonably requested by the Trustee, the matter shall be resolved by a "Big 5" accounting firm selected by the Trustee, with the losing party paying such accounting firm's fees.

(ii)   For any taxable year through and including the 2008 taxable year, after the Effective Date, within 15 days of the filing of any Tax Return for any such taxable year, the Trustee shall present Hillman with a calculation of any Tax Benefit attributable to such Tax Return.  Within 15 days of receiving such calculation, Hillman shall pay such Tax Benefit as directed by the Trustee, unless such Tax Benefit was realized directly by Peregrine and did not flow through to Hillman.  If Hillman disagrees with the calculation of any Tax Benefit, the matter shall be resolved by a "Big 5" accounting firm selected by the Trustee, with the losing party paying such accounting firm's fees.

(iii)   For each taxable year (A) in which Hillman reported gross income from Peregrine, the Funding Entities, or Coastal Pacific Realty and/or (B) from and including the 2000 taxable year through and including the 2008 taxable year, Hillman hereby assigns and transfers to the Trustee, at the expense of the Trustee, the right to direct and control any audit, litigation, suit for refund or other controversy relating to any Tax Benefit or Tax Refund, including but not limited to the right to bring a court action for a Tax Refund or to file a petition in the United States Tax Court.  Hillman shall cooperate fully, as and to the extent reasonably requested by the Trustee, at the expense of the Trustee, in connection with any audit, litigation or other proceeding with respect to any Tax (as defined in Schedule F attached hereto), Tax Refund or Tax Benefit to support the position taken on any such Tax Return. Such cooperation shall include the retention and the provision of records and information, which are reasonably relevant to any such audit, litigation or other proceeding and explanation of any material provided hereunder.  Hillman agrees to retain all books and records with respect to Tax matters pertinent to any such Tax Return relating to any taxable period until the expiration of the statute of limitations (and any extensions thereof) of the respective taxable periods.

(iv)   Upon the receipt by Hillman of any correspondence, notice or other information from any Tax authority in conjunction with any such Tax Return or Tax Refund, Hillman shall immediately notify the Trustee and provide copies thereof.

d.   Limitation on Tax Refunds and Tax Benefits.  Notwithstanding anything contained in the definitions of "Tax Refund" and "Tax Benefit" as set forth in Schedule F attached hereto, it is the intent of the Parties to assign and transfer to the Trustee any Tax Refunds and Tax Benefits, but not to allow a double recovery of any amounts.  Therefore, to the extent any amount is includible as both a Tax Refund and a Tax Benefit, the Trustee shall only be entitled to recover such amount once.  In addition, to the extent any amount constitutes both a Tax Benefit and a Tax Refund, it shall be deemed to be a Tax Refund payable in accordance with Paragraph 8(a)(ii) above, and not a Tax Benefit.

e.   Preservation of Social Security Benefits.  Neither Hillman nor Peregrine shall file any Tax Return, apply for any Tax Refund, or pay any Tax Benefit to the Trustee relating to any social security tax, employment tax, or other Tax to the extent that doing the same would directly reduce the calculation of social security benefits to which Hillman or Freema Hillman would be entitled under relevant law as a result of such Tax Return, Tax Refund, or Tax Benefit reducing the amount of social security contributions made by or for the benefit of Hillman or Freema Hillman.

586157v10

9.    Cooperation and Best Efforts. The Parties agree to use best efforts to cooperate fully with each other and to execute and deliver any and all further documents that may be reasonably necessary or desirable to effectuate the purposes of this Agreement.   Hillman specifically agrees (i) to cooperate and supply any and all information requested by the Trustee in connection with any Tax matter and in accordance with Paragraph 8 hereof, and to make no claims or statements and take no actions inconsistent with any representation made to the Trustee as of the Effective Date; (ii) to use best efforts and to fully cooperate in the liquidation of the Investment Assets in accordance with Paragraph 15 hereof; and (iii) to use best efforts and to fully cooperate in the prosecution of third-party claims for a period of four (4) years from the Effective Date or until the conclusion of any third-party litigation, whichever is later.   Hillman agrees that the Trustee has exclusive control over the Investment Assets and nothing in Paragraph 15 hereof is, shall, or may be construed as a grant in whole or in part of any authority of Hillman to bind the Trustee, the Receiver, PinnFund, Peregrine and/or the Funding Entities. Hillman further agrees that he acts at the sole discretion of the Trustee to discharge the limited duties identified in Paragraph 15 and/or in Paragraph 8 of this Agreement.   Nothing in this Agreement shall be construed to create any employment, independent contractor, agency, co-venture, partnership, or other similar relationship between Hillman and the Trustee, the Receiver, PinnFund, Peregrine, and/or the Funding Entities. If Hillman anticipates any conflict will arise in carrying out his duties as defined in this Agreement due to employment, illness, disability, or any such other similar situation creating impossibility of performance, he shall immediately notify the Trustee, and if the Trustee and Hillman cannot reach an agreement, they shall proceed to mediation before Judge Burns.   Hillman shall be reimbursed for reasonable out-of-pocket expenses incurred with respect to fulfilling his duties under this Paragraph 9.

10.    Waiver of Claims.   Hillman and Freema Hillman shall waive any claim to distribution, including, but not limited to, any claim of the Defined Benefit Plan and the Hillman Family Revocable Trust dated December 10, 1997 ("Hillman Family Trust") (subject to Paragraph 11 hereof), from the bankruptcy estates of PinnFund, Peregrine, the Funding Entities, or the class action lawsuit to be commenced by the Anticipated Class Representatives in connection with any loan or investment made by Hillman or Freema Hillman, the Defined Benefit Plan, or the Hillman Family Trust to such entities.

11.    Hillman Family Members' Claims.   Any claims of Bud Davis, Thea Hillman and the Estate, against the bankruptcy estates of the Funding Entities, shall survive this Agreement, subject to any and all defenses that the bankruptcy estates may have against the same. Nevertheless, the bankruptcy estates agree to waive any defense associated with any investments being made in any of the Funding Entities through the Hillman Family Trust to the extent that such family member proves that his or her separate and legal property was used to make the investment.

12.    Representations and Covenants. Hillman represents, warrants and covenants that, as of the Effective Date of this Agreement:

(a) he is being directly benefited by the terms and provisions of this Agreement;

(b) with the exception of the Retained Assets and any Tax Refunds or Tax Benefits, Schedules A and B attached hereto are an accurate and complete list of all assets he owns or has

an interest in directly or indirectly, of any kind whatsoever, including, but not limited to, partnership interests, limited liability company interests, trusts, assignments, assets owned by other people to which he does or will derive any currently known type of benefit from, now or in the future, including, but not limited to, assets held by nominees or agents, and agreements of any kind (oral or in writing) to share in profits, income streams, proceeds from liquidation of assets, or any other type of benefit, now or in the future;

(c) he has provided the Receiver and/or the Trustee with a copy of all agreements and operative documents in his possession or control with respect to any Investment Asset in which he owns an interest, and such documents represent the controlling documents to the best of his knowledge;

(d) the assets listed on Schedule E are Freema Hillman's separate property and at no time has any such asset been commingled, enhanced, or maintained with Hillman's assets or community property assets, except to the extent that the moneys in Summit Bank Account #1-800003579 are the proceeds of investment assets held in the name of the Hillman Family Trust;

(e) neither he nor any Hillman family member, nominee, or agent has retained any interest, direct or indirect, vested or contingent, of any kind, including, but not limited to, any benefit derived now or in the future with respect to any of the assets disclosed on Schedule D attached hereto;

(f) all payments, distributions, royalties, fees, or any other similar payments or income received in connection with any Asset after March 23, 2001, have been deposited into a bank account disclosed on Schedule A attached hereto;

(g) except as set forth in Schedule G attached hereto, Hillman (as "Hillman" is defined for purposes of any matter relating to Taxes (including extensions of time for the filing thereof), as defined in Schedule F attached hereto) and Peregrine have filed all Tax Returns that he was required to file prior to or as of the Effective Date, and to the best of Hillman's knowledge as of the Effective Date, (i) all such Tax Returns were correct and complete in all respects, and (ii) all such Taxes owed by either Hillman or Peregrine (whether or not shown on any Tax Return) have been paid;

(h) except as set forth in Schedule G attached hereto, neither Hillman nor Peregrine currently is the beneficiary of any extension of time within which to file any Tax Return;

(i) except as set forth in Schedule G attached hereto, neither Hillman nor Peregrine expects any Tax authority to assess any additional Taxes for any period for which Tax Returns have been filed, or to deny any Tax Refund which has been applied for as of the date hereof;

(j) except as set forth in Schedule G attached hereto, there is no dispute, claim or audit concerning any Tax or Tax Return of Hillman or Peregrine either (i) claimed or raised by any authority in writing or (ii) as to which Hillman has knowledge based upon personal contact with any agent of such authority;

(k) neither Hillman nor Peregrine has waived any statute of limitations in respect of any Taxes or agreed to any extension of time with respect to any Tax assessment or deficiency;

(l) although Hillman has not conducted an independent appraisal of the Assets listed on Schedules A and B attached hereto, to the best of his knowledge as of the Effective Date, the value of each Asset listed on Schedules A and B attached hereto is approximately equal to the amounts Hillman invested in the Assets or other value deemed more likely based on Hillman's knowledge of the Assets;

(m) as of the Effective Date, Hillman has not received any refund disclosed or applied for on his federal income tax return for his 2000 taxable year;

(n) he has and will provide complete, truthful and accurate information in connection with Paragraph 9 hereof and will use his best efforts to determine the completeness, truthfulness and accuracy thereof;

(o) neither he nor Freema Hillman has or will unilaterally transfer the funds held in the CPW Partners, Ltd. ("CPW") account or any trust interest in CPW or other JAFRE Trust assets;

(p) he and Freema Hillman understand and acknowledge that their right to the Retained Assets in Paragraph 4 hereof is specifically contingent upon the transfer of all moneys held in CPW and/or any other assets held in the JAFRE Trust;

(q) at the direction and expense of the Trustee, he and Freema Hillman agree to commence or join any legal action to compel the trustee of the JAFRE Trust to disgorge the JAFRE Trust assets;

(r) he shall not take any action directly or indirectly to impair, impede or encumber any of the Assets;

(s) neither he nor any nominee, or agent holds any interest, right or title, directly or indirectly, vested or contingent, of any kind, in any foreign entity, trust, partnership, bank account, or asset, except for the JAFRE Trust;

(t) he has no knowledge or information of any kind and he has not benefited in any way, now or in the future, from the transfer of moneys from Barclays Bank in Barbados, as disclosed in Exhibit 3 attached hereto;

(u) no person, whether or not a party to this Agreement, has the legal right to void, impede, prevent or otherwise defeat the transfer of any Asset to the Trustee, and Hillman will execute and deliver any documents and instruments and, at the expense of the Trustee, take any other action as may reasonably be required in each case such that any Asset will be transferred to the Trustee upon request of the Trustee in accordance with the terms of this Agreement;

(v) he is unaware of any encumbrances on the Assets other than as disclosed herein; and

(w) he is unaware of any impediments to the recovery of assets in the JAFRE Trust; and

(x) he and Freema Hillman shall undertake whatever is legally appropriate to cause the JAFRE Trust to transfer all moneys and other assets to the Trustee; provided, however, that Hillman and Freema Hillman will not be required to hire or compensate any professional required to carryout such action.

13. <u>Audit Obligation</u>. In addition to the requirements of Paragraph 8 hereof, for a period of seven (7) years after approval of this Agreement, or until the bankruptcy cases of the Funding Entities are closed, Hillman shall provide the Trustee with an annual balance sheet as of December 31st of any calendar year, under penalty of perjury, on or before February 15th of the following calendar year, and any supplemental materials from which such balance sheet was prepared. To the extent that any item appears unreasonable, the Trustee shall be entitled to request further documents.

14. <u>Mutual Releases</u>. As of the Effective Date and in consideration of Hillman's covenants, duties and responsibilities under this Agreement, each of the Settling Parties (specifically excluding the Anticipated Class Representatives) hereby waives and releases as follows:

(i) <u>General Release and Waiver of Claims</u>. Except as to such rights or claims as may be created by this Agreement, each of the Settling Parties (except the Anticipated Class Representatives) releases, remises, and forever discharges each of Hillman and Freema Hillman, and each of Hillman and Freema Hillman releases, remises, and forever discharges each of the Settling Parties (except the Anticipated Class Representatives) from any and all claims, demands, causes of action, obligations, damages, and liabilities, whether known or unknown, heretofore or hereafter arising out of, connected with or incidental to the allegations set forth in the First Amended Complaint in the SEC Action including, but not limited to, all claims for recoveries and/or damages for amounts previously received from any SEC Action Defendants arising under any state or federal statute, including, but not limited to, claims arising under any state fraudulent conveyance law or federal bankruptcy law including, but not limited to Sections 544, 545, 547, 548 or 553 of Title 11 of the United States Code. Each of the Settling Parties (except the Anticipated Class Representatives) represents and warrants that it has not assigned, conveyed, transferred or pledged any potential claims, defenses, demands, or causes of action against Hillman and Freema Hillman to any other person or entity, whether voluntarily or involuntarily, and that to the extent any such claims, defenses, demands or causes of action exist, the Settling Parties are the sole owners and holders of such claims, defenses, demands, or causes of action. Each of Hillman and Freema Hillman represents and warrants that it has not assigned, conveyed, transferred or pledged any potential claims, defenses, demands, or causes of action against each of the Settling Parties (except the Anticipated Class Representatives) to any other person or entity, whether voluntarily or involuntarily, and that to the extent any such claims, defenses, demands or causes of action exist, Hillman and Freema Hillman are the sole owners and holders of such claims, defenses, demands, or causes of action

(ii) <u>Waiver of Civil Code Section 1542</u>. Each of the Parties (except the Anticipated Class Representatives) specifically waives the benefit of the provisions of Section 1542 of the California Civil Code, which provides as follows:

586157v10

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

      (iii)    <u>Release Inures to Benefit of Heirs</u>. The provisions, waivers, and releases set forth in this Paragraph 14 hereof shall inure to the benefit of Hillman and Freema Hillman and their respective heirs, and shall cover certain potential claims against permitted transferees. Such potential claims against permitted transferees shall solely mean claims against parties arising solely from receipt of payment from Hillman that is allowed by or is pursuant to the District Court's order.

      (iv)    <u>Survival of Release and Waiver of Claims</u>.  Subject to Paragraph 21 hereof, the provisions set forth in this Paragraph 14 shall survive full performance of all of the terms of this Agreement.

      (v)    <u>Limitation on Releases</u>.  Notwithstanding anything to the contrary, the Receiver and/or the Trustee reserve the right to assert claims against Hillman as a nominal party to the extent that Hillman, as a matter of law, needs to be named as a defendant in order to maintain claims against third parties; provided, however, in any such action neither the Trustee nor the Receiver shall seek any recoveries against Hillman.

    15.    <u>Earn Out</u>. Hillman shall use his best efforts to assist the Trustee in the sale of the Investment Assets and the realization of Tax Refunds and/or Tax Benefits.  In consideration for Hillman's services provided in accordance with the provisions of this Paragraph and the provisions of Paragraph 8 hereof, Hillman shall receive one percent (1%) of the first $3 million realized from the sale of Investment Assets ($30,000); one and a half percent (1.5%) of the next $3 million realized from the sale of Investment Assets ($45,000); three and three-quarters percent (3.75%) of the next $2 million realized from the sale of the Investment Assets ($75,000); nine percent (9%) of the next $2 million realized from the sale of the Investment Assets ($180,000); and twelve percent (12%) of any additional amounts realized from the sale of Investment Assets; provided, however, that in no event shall Hillman receive in excess of $650,000 from the sale of the Investment Assets. In addition, Hillman shall receive two and a half percent (2.5%) of the proceeds realized from any Tax Refunds or Tax Benefits attributable to Paragraph 8 hereof; provided, however, that in no event shall Hillman receive in excess of $250,000 pursuant to this sentence; and provided, further, that Hillman shall repay to the Trustee any amounts received pursuant to this sentence; to the extent such amounts relate to any Tax Refund or Tax Benefit the Trustee is required to repay in accordance with the Overriding Tax Provisions contained in Schedule F attached hereto.  All payments due to Hillman pursuant to this Paragraph 15 shall be classified as administrative expenses due from Peregrine and/or the Funding Entities, as appropriate.  Any amounts payable to Hillman pursuant to this Paragraph 15 are contingent upon Hillman's full compliance with this Agreement. In the event that Hillman dies prior to a payment in consideration of services Hillman performed prior to his death in accordance with this Paragraph 15 and/or Paragraph 8 hereof, such payment due shall be paid to Freema Hillman, including advances under Paragraph 16 hereof.

16. <u>Advance</u>. As an advance of amounts to which Hillman is entitled to receive from the bankruptcy estates pursuant to Paragraph 15 hereof, he shall receive $10,000 per month for 24 months, payable on the 15th day of each month, commencing on January 15, 2002, and ending on December 15, 2003. Such advance payments shall be classified as administrative expenses of the bankruptcy estates due from Peregrine and/or the Funding Entities, as appropriate. Any amounts due to Hillman under Paragraph 15 hereof shall be offset by all amounts received by Hillman pursuant to this Paragraph 16. Advances payable to Hillman pursuant to this Paragraph 16 shall be charged against the first moneys payable to Hillman pursuant to Paragraph 15 hereof. In accordance with the preceding sentence, once Hillman has received the maximum amount to which he is entitled under Paragraph 15 hereof, no further payments shall be made pursuant to this Paragraph 16. Any amounts payable to Hillman pursuant to this Paragraph 16 are contingent upon Hillman's full compliance with this Agreement.

17. <u>Good Faith Approval</u>. On November 29, 2001, the Anticipated Class Representatives filed the Investor Action; however, their appointment as the Anticipated Class Representatives cannot be determined for at least sixty (60) days from such date. The objective of the Investor Action is to provide a vehicle to obtain a judicial declaration that this Agreement has been entered into in good faith and to secure the broadest bar reasonably possible in the District Court for additional claims being asserted against Hillman by investors in the Funding Entities.

18. <u>Distribution to Investors</u>. In connection with settlements provided in this Agreement, Peregrine and the Funding Entities, as appropriate, shall cause a distribution of between $10 million and $11 million to be made to eligible investors of the Funding Entities, as determined by applicable bankruptcy law. To effectuate this distribution, reference of the bankruptcy cases in the Peregrine and Funding Entities shall be withdrawn from the Bankruptcy Court to the District Court for this limited purpose, and approval of the distributions shall be sought in the District Court in each of the bankruptcy cases impacted.

19. <u>Entire Agreement</u>. This Agreement represents the entire agreement and understanding between the Settling Parties concerning the settlement of all claims and supersedes and replaces any and all prior agreements and understandings among them. Each term of this Agreement is contractual and not merely a recital.

20. <u>Covenant Not to Enforce</u>. Subject to the exception contained in Paragraph 21 hereof, the Receiver and the Trustee represent that they will not enforce the Consent Judgment against Hillman, provided there is compliance with the material terms of this Agreement, including Paragraph 12.

21. <u>Enforcement of Claims</u>. Notwithstanding the covenant not to sue provided in Paragraph 20 hereof, if (i) within ninety (90) days an involuntary petition in bankruptcy is initiated against Hillman and Hillman is unsuccessful in challenging the filing and an Order for Relief is entered therein; (ii) Hillman files a voluntary petition in bankruptcy within ninety (90) days of the execution of this Agreement; (iii) the representations and covenants provided in Paragraph 12 hereof are determined to be false; or (iv) Hillman does not use best efforts pursuant to Paragraphs 8, 9, and 15 hereof ("Best Efforts"), the covenant not to sue of Paragraph 20 hereof shall be rescinded and the obligation to make any earn out and advance payment pursuant to

-13-

Paragraphs 15 and 16 hereof shall be forfeited and any amounts received to date pursuant to Paragraph 15 hereto shall be repaid to the Trustee within ten (10) business days. Upon an event of default under (iii) and (iv) herein, the Trustee shall provide notice to Hillman pursuant to Paragraph 30 hereof, after which Hillman shall have five (5) business days to respond to the Trustee's concerns and if the Trustee and Hillman cannot reach an agreement, they shall proceed to mediation before Judge Burns.

22.    No Admission of Liability.  The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties hereto, or any of them, either previously or in connection with this Agreement, shall be deemed or construed to be (i) an admission of the truth or falsity of any claims, including claims of fact, heretofore made or (ii) an acknowledgement or admission by any of the Parties of any fault or liability or amount of income whatsoever to any other of the Parties or to any third party. Notwithstanding anything to the contrary in this Agreement, Hillman understands and agrees that the Consent Judgment is not discharged under section 523 of the Bankruptcy Code.

23.    No Oral Modification.  This Agreement may only be amended in writing signed by all the Parties; provided, however, that during the course of the implementation of this Agreement, the Trustee and/or the Receiver, as appropriate, and Hillman may agree in writing to modify the non-economic terms of this Agreement, as appropriate, in furtherance of the Parties' intent under this Agreement.

24.    Governing Law.  The laws of the State of California shall govern this Agreement.

25.    Effective Date.  This Agreement is effective upon approval by the SEC, the District Court, and, if necessary, the Bankruptcy Court.

26.    Construction.  The Settling Parties have cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any one of the Parties.

27.    Counterparts.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

28.    Voluntary Execution of Agreement.  This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Settling Parties hereto, with the full intent of releasing all claims. The Parties acknowledge that:

   (i)    they have read this Agreement;

   (ii)   they have been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of their own choosing, or that they have voluntarily declined to seek such counsel with full knowledge of the potential consequences thereof;

   (iii)  they have made such investigation of the facts pertaining to this settlement and this Agreement, and of all the matters pertaining to it, as they deem necessary;

-14-

586157v10

(iv)    they understand the terms and consequences of this Agreement and of the releases it contains; and

(v)    they are fully aware of the legal and binding effect of this Agreement.

29.    Enforcement and Jurisdiction.

(a)    Generally. This Agreement shall be incorporated into an order of the District Court approving the settlement, and all Settling Parties shall submit to the jurisdiction of Magistrate Judge Burns to enforce the continuing obligations under this Agreement, and to resolve any dispute that may arise under this Agreement. Notwithstanding the foregoing, at the Trustee's option, any and all disputes relating to any Tax matter which may arise with the IRS or any other authority pursuant to this Agreement shall be resolved in the Bankruptcy Court, which shall retain jurisdiction to deal with such Tax (as defined in Schedule F attached hereto) matters, or any other court of the Trustee's choosing.

(b)    Severability. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term nor provision in any other situation or in any jurisdiction.

(c)    Succession. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and assigns.

30.    Notice. Whenever any party shall desire or be required to give or serve any notice, demand, request or other communication with respect to this Agreement, each such notice shall be in writing and shall be effective only if the same is delivered by personal service, by telecopy, by telegram, or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| | |
|---|---|
| If to Receiver: | Charles G. La Bella, Esq. |
| | c/o McKenna & Cuneo, L.L.P. |
| | 750 B Street, Suite 3300 |
| | San Diego, CA 92101 |
| | Fax: (619) 595-5450 |
| | |
| With a Copy to: | Debra A. Riley, Esq. |
| | c/o Allen Matkins Leck Gamble & Mallory L.L.P. |
| | 501 W. Broadway, 9th Floor |
| | San Diego, CA 92101 |
| | Fax: (619) 233-1158 |

-15-

| | |
|---|---|
| If to Trustee: | Richard M Kipperman<br>c/o Corporate Management, Inc.<br>Bankruptcy Trustee<br>P.O. Box 3939<br>La Mesa, CA 91944-3939<br>Fax: (619) 668-9014 |
| With a Copy to: | Ali M. M. Mojdehi, Esq.<br>c/o Baker & McKenzie<br>101 W. Broadway, 12th Floor<br>San Diego, CA 92101<br>Fax: (619) 236-0429 |
| If to SEC: | Thomas A. Zaccaro, Esq.<br>c/o Securities and Exchange Commission<br>Pacific Regional Office<br>5670 Wilshire Boulevard, 11th Floor<br>Los Angeles, CA 90036<br>Fax: (323) 965-3908 |
| If to Hillman: | James L. Hillman<br>83 Castle Park Way<br>Oakland, CA 94611<br>Fax: (510) 531-5035 |
| If to the Anticipated<br>Class Representatives: | Ronald G. VandenBerghe<br>525 Sycamore Valley Road West<br>Danville, CA 94526<br>Fax: (925) 837-6196<br><br>Bruce Miller<br>2174 Green Street<br>San Francisco, CA 94123<br>Fax: (415) 921-3870<br><br>Thomas Frame<br>4518 Glencannon Drive<br>Suisun, CA 94585<br>Fax: (707) 864-6041 |
| With a Copy to: | John Bartko, Esq.<br>c/o Bartko, Zankel, Tarrant & Miller<br>900 Front Street, Suite 300<br>San Francisco, CA 94111<br>Fax: (415) 956-1152 |

-16-

586157v10

Any such notice delivered personally or telecopied shall be deemed to have been received upon delivery. Any such notice sent by telegram shall be presumed to have been received by the addressee one (1) business day after its acceptance for sending by an authorized carrier thereof. Any such notice sent by mail shall be presumed to have been received by the addressee three (3) business days after posting in the United States Postal Service. A party hereto may change its address by giving each of the Parties written notice of any address change as herein provided.

31.    Authorization to Bind. The Parties warrant that the signatories have full authority to enter into this Agreement on behalf of any entity or entities for whom they are signing.

IN WITNESS OF THE FOREGOING, the Parties have executed this Agreement as of the Effective Date.

DATED:  December /2 2001                    PINNFUND USA, INC.

                                            By:

                                            Charles G. La Bella, Esq.

                                            Its: _Receiver / Responsible Person_
                                                 _Pinnfund_

DATED: December ___, 2001                   PEREGRINE FUNDING INC.

                                            By: _____
                                                Richard M Kipperman
                                            Its: _____

DATED: December ___, 2001                   ALLIED CAPITAL PARTNERS L.P.

                                            By: _____
                                                Richard M Kipperman
                                            Its: _____

DATED: December ___, 2001                   GRAFTON PARTNERS L.P.

                                            By: _____
                                                Richard M Kipperman
                                            Its: _____

DATED: December ___, 2001                   SIX SIGMA, LLC

                                            By: _____
                                                Richard M Kipperman
                                            Its: _____

-17-

586157v10

Any such notice delivered personally or telecopied shall be deemed to have been received upon delivery. Any such notice sent by telegram shall be presumed to have been received by the addressee one (1) business day after its acceptance for sending by an authorized carrier thereof. Any such notice sent by mail shall be presumed to have been received by the addressee three (3) business days after posting in the United States Postal Service. A party hereto may change its address by giving each of the Parties written notice of any address change as herein provided.

31.  Authorization to Bind.  The Parties warrant that the signatories have full authority to enter into this Agreement on behalf of any entity or entities for whom they are signing.

IN WITNESS OF THE FOREGOING, the Parties have executed this Agreement as of the Effective Date.

DATED:  December __, 2001        PINNFUND USA, INC.

                                By: _____
                                    Charles G. La Bella, Esq.
                                Its: _____


DATED: December __, 2001         PEREGRINE FUNDING INC.

                                By: _____
                                    Richard M Kipperman
                                Its: _Bancruptcy Trustee_


DATED: December 10, 2001         ALLIED CAPITAL PARTNERS L.P.

                                By: _____
                                    Richard M Kipperman
                                Its: _Bancruptcy Trustee_


DATED: December 10, 2001         GRAFTON PARTNERS L.P.

                                By: _____
                                    Richard M Kipperman
                                Its: _Bancruptcy Trustee_


DATED: December 10, 2001         SIX SIGMA, LLC

                                By: _____
                                    Richard M Kipperman
                                Its: _Bancruptcy Trustee_

-17-

586157v10

DATED: December /3, 2001

ARDANTZ ASSOCIATES LIMITED
PARTNERSHIP

By: _____
  Jeff Ardantz
Its: *Managing Member of General Partner*

DATED: December __, 2001

_____
Ronald G. VandenBerghe,
solely in his capacity as an Anticipated
Class Representative

DATED: December __, 2001

_____
Bruce Miller,
solely in his capacity as an Anticipated
Class Representative

DATED: December __, 2001

_____
Thomas Frame,
solely in his capacity as an Anticipated
Class Representative

DATED: December __, 2001

_____
James L. Hillman

DATED: December __, 2001

_____
Freema Hillman

-18-

SA6197v10

DATED: December __, 2001

Ronald G. VandenBerghe,
solely in his capacity as an Anticipated Class
Representative

DATED: December __, 2001

Bruce Miller,
solely in his capacity as an Anticipated Class
Representative

DATED: December __, 2001

Thomas Frame,
solely in his capacity as an Anticipated Class
Representative

DATED: December __, 2001

James L. Hillman

DATED: December __, 2001

Freema Hillman

DATED: December __, 2001

ARDANTZ ASSOCIATES LIMITED
PARTNERSHIP

By: _____
        Jeff Ardantz
Its: _____


DATED: December __, 2001

_____
Ronald G. VandenBerghe,
solely in his capacity as an Anticipated
Class Representative


DATED: December _10_, 2001

_____
Bruce Miller,
solely in his capacity as an Anticipated
Class Representative


DATED: December __, 2001

_____
Thomas Frame,
solely in his capacity as an Anticipated
Class Representative


DATED: December __, 2001

_____
James L. Hillman


DATED: December __, 2001

_____
Freema Hillman


-18-

DATED: December __, 2001

ARDANTZ ASSOCIATES LIMITED
PARTNERSHIP

By: _____
        Jeff Ardantz

Its: _____

DATED: December __, 2001

_____
Ronald G. VandenBerghe,
solely in his capacity as an Anticipated
Class Representative

DATED: December __, 2001

_____
Bruce Miller,
solely in his capacity as an Anticipated
Class Representative

DATED: December __, 2001

_____
Thomas Frame,
solely in his capacity as an Anticipated
Class Representative

DATED: December __, 2001

_____
James L. Hillman

DATED: December __, 2001

_____
Freema Hillman

-19-

586157v10

TOTAL P.02

DATED: December __, 2001

ARDANTZ ASSOCIATES LIMITED
PARTNERSHIP

By: _____
          Jeff Ardantz
Its: _____


DATED: December __, 2001

_____
Ronald G. VandenBerghe,
solely in his capacity as an Anticipated
Class Representative


DATED: December __, 2001

_____
Bruce Miller,
solely in his capacity as an Anticipated
Class Representative


DATED: December __, 2001

_____
Thomas Framo,
solely in his capacity as an Anticipated
Class Representative

_____
James L. Hillman


DATED: December /0, 2001

_____
Freema Hillman

586157v10

## SCHEDULES

A. Bank and Trust Assets

B. Investment Assets

C. Liabilities To Be Assumed

D. Assets In Which Hillman Has No Interest

E. Freema Hillman Separate Property

F. Certain Tax Matter Definitions and Provisions

G. Tax Matter Disclosures


## EXHIBITS

1. SEC Consent Judgment

2. Asset Allocation Letter Agreement

3. Barclay Bank Documents

# SCHEDULE A

# BANK AND TRUST ASSETS

I.  CASH, CERTIFICATES OF DEPOSIT, MONEY MARKET ACCOUNTS

| Description | Bank | Account No. |
|---|---|---|
| 1.  Personal Checking Account | Summit Bank, Oakland | 01-00005964 |
| 2.  Hillman Family Trust | California Bank & Trust, San Francisco | 10-100036-29 |
| 3.  Hillman Family Trust | California Bank & Trust, San Francisco | 10-1000375-26 |
| 4.  F&J Enterprises | Summit Bank, Oakland | 03-20009043 |
| 5.  C/D Account (subject to court-ordered monthly budget) | Summit Bank, Emeryville | 38-0000484 |
| 6.  C/D Account | Summit Bank, Emeryville | 38-000069 |
| 7.  Coastal Pacific Realty | Wells Fargo, Oakland | 008-0534274 |
| 8.  Hillman Family Trust Savings Account | Merrill Lynch, Walnut Creek | 204-41889 |
| 9.  JAFRE Trust Savings Account | City National Bank, San Francisco | 0432504492 |
| 10. IRA Savings Account | Bear Stearns | 522-03481-6000 |
| 11. California 2000 income tax refund, to the extent it has not been deposited into one of the above accounts | Undeposited check | |

II.    TRUST INTERESTS

`      Description

1.  Hillman Family Trust

2.  JAFRE Trust (CPW Partners, Ltd.)

-21-

586157v10

## SCHEDULE B

### INVESTMENT ASSETS

1. 40' Tiara boat located in Alameda, California.

2. Limited Partnership interest in JHTH Associates which owns, among other things, Red Mountain Limited Partnership Project (Hillman's interest allegedly lost), 1 Unit in Selby Venture Partners I Limited Partnership, the Green Springs Project, the yellow house located at 17775 Highway 108, Jamestown, California, and Cal Sierra Oaks Limited Partnership (subject to future capital calls).

3. Limited Partnership interest in Hix VC II Limited Partnership which owns 1 Unit in Atherton Venture Fund Limited Partnership.

4. Limited Partnership interest in Sutter Opportunity Fund Limited Partnership.

5. Limited Partnership interest in Sutter Opportunity Fund II Limited Partnership.

6. Member interest in MP Acquisition Co., LLC.

7. Limited Partnership interest in Minotour Partners II, L.P.

8. Hillman Family Trust's Limited Partnership interest in NetService Venture Fund Limited Partnership.

9. General Partnership interest in Daugherty Petroleum.

10. All yields/income (monthly or quarterly) from the general partnership interest in Daugherty Petroleum 2000-1 Drilling Program.

11. Hillman Family Trust's Limited Partnership interest in Signature Theatres, LLC (Group II and Group III investments).

12. Limited Partnership interest in Dafka Holdings Limited Partnership.

13. Ownership interest in Bliss Resorts (San Blas, Mexico -- stock has not been issued, to date).

14. Ownership interest in METALAST International, LLC.

15. Warrants to purchase 17,500 shares of METALAST International, LLC at $25 per share.

16. Warrants to purchase 4,500 shares of METALAST International, LLC at $30 per share.

17. Limited Partnership interest in G&S Investors Lake Mead, LLC.

18. Partnership interest in Lion's Gate Development Partners Limited Partnership.

-22-

19.     Limited Partnership interest in Lions Gate Development Partners (Housing Element) Limited Partnership.

20.     Fifty Percent (50%) interest in Glenaire/Cherryville Partnership Promissory Note.

21.     Fourteen (14) Promissory Notes, plus accrued interest made by METALAST International, LLC in the aggregate principal amount of $2,053,000, plus all accrued interest.

22.     Promissory Note made by Tom and Kim Hix in the original principal amount of $890,000, plus accrued interest.

23.     Personal indebtedness of Tom and Kim Hix in the principal amount of $250,000, plus accrued interest.

24.     Interest in Vector Capital Corporation.

25.     Interest in Oakdale Project Limited Partnership.

26.     Limited Partnership interest in High Desert Development Partners, LLC (allegedly lost in foreclosure).

27.     Limited Partnership interest in Riverwood Associates and related entities.

28.     Interest in Clarkson Corporation, Willow Cliff Associates and related entities.

## SCHEDULE C

## LIABILITIES TO BE ASSUMED

| Description | Entity to Whom Obligation is Owed | Amount |
|---|---|---|
| 1. $118,250 approximately for sales tax on sale of boat (if it occurs) | State Board of Equalization | $118,250 approximate |
| 2. Dockage for 40' Tiara Boat | Crows Nest Alameda, California | $350 per month[*] |
| 3. Insurance for 40' Tiara Boat | Cox Ins. Co. Newport Beach, CA | $1,973 per year[*] |
| 4. Overriding Tax Provisions (as described on Schedule F attached hereto) | | |

---

[*] Beginning the Effective Date of this Agreement.

-24-

## SCHEDULE D

## ASSETS IN WHICH HILLMAN HAS NO INTEREST

1.    Bear Stearns Acct# 520-51430

2.    Bear Stearns Acct# 040-34230

3.    Comerica Bank Acct# 1880640790

4.    Lone Star Bank Acct#

5.    Schwab Acct# 4357-6758

6.    Summit Bank Acct# 01-201926

7.    Summit Bank Acct# 01-314169

8.    Wells Fargo Bank Acct# 0103-126132

9.    Wells Fargo Bank Acct# 6103-434684-52

10.   130,000 shares of California Property Fund

11.   Century Ranch Notes (all of which are being held by the Defined Benefit Plan).

12.   Interest in BOT Trust

13.   Interest in Burnham Park Plaza

14.   Interest in Household Financial

15.   Interest in Kacy Associates

16.   Interest in Kyle Rosen Fund

17.   Interest in Latinvest Partners

18.   Interest in Marshall Investment Partners

19.   Interest in Palm Securities and/or Stan Sloman Partnership

20.   Interest in PinnComm

21.   Interest in PL Associates

586157v10

22.    Interest in Russian Investment Fund

23.    Interest in Transgroup Partnership

24.    Twenty Percent (20%) interest in JHTH

25.    Rights to Gas Guard sales

26.    Fidelity Charitable Gift Fund

27.    Peregrine Partners, Ltd.

28.    BayBerry Square Associates, L.P.

29.    Castle Group, Ltd.

30.    Country Club Square Associates

31.    DHS Capitol Conversions, Inc.

32.    GlenBrook Square Associates

33.    Greentree Square Associates

34.    Hix/Robenstein Companies

35.    Kingsley Square Associates

36.    Melton Management Associates Inc.

37.    Mountain Run Associates

586157v10

## SCHEDULE E

### FREEMA HILLMAN SEPARATE PROPERTY

| Description | Bank | Account No. | Approximate Amount |
|---|---|---|---|
| 1. IRA account - Freema | Bear Stearn | 522-03482-6001 | $4,500 |
| 2. Freema Hillman - Bank Account | Summit Bank, Emeryville | 1-800003579 | $170,000 |
| 3. Freema Hillman - Bank Account | Summit Bank, Oakland | 01-00005956 | $10,000 |
| 4. Freema Hillman Personal Property Located in Personal Residence and Personal Effects | | | |
| 5. Freema Hillman interest, if any, in estate of Bertha Hillman* | | | |
| 6. Undivided 23.4% Interest in Real Property Located on Cottinger Street, Pleasanton, CA** | | | |

---

\* Provided, however, the Estate demonstrates that the origin of the Estate's assets were not obtained from Hillman, PinnFund, Peregrine, or the Funding Entities.

\** Provided, however, Freema Hillman demonstrates that her separate property was used to acquire such interest.

586157v10

## SCHEDULE F

## CERTAIN TAX MATTER DEFINITIONS AND PROVISIONS

For purposes of any matter relating to any Tax (defined below) as set forth in this Agreement,

"Excluded Liability" means, with respect to this Schedule F, any penalty or other liability relating to any Tax, including but not limited to a Tax Refund or Tax Benefit paid by Hillman to the Trustee, but only to the extent that any such penalties or other liabilities are directly attributable either (i) to a position on a Tax Return filed by Hillman before the Effective Date; (ii) to a position on a Tax Return prepared and filed in accordance with this Agreement that does not directly relate to a payment or transfer made pursuant to Paragraph 3 or Paragraph 8 hereof and was not pursuant to a direction or instruction by the Trustee; or (iii) to a position on a Tax Return prepared and filed in accordance with this Agreement that directly relates to a payment or transfer made pursuant to Paragraph 3 or Paragraph 8 hereof, if such penalty or other liability is attributable to (i) the determination that any representations Hillman has made to the Trustee as of the Effective Date are false; or (ii) any subsequent statements or actions of Hillman are contradictory to any representations made to the Trustee as of the Effective Date.

"Hillman" means James Hillman and Freema Hillman for any Tax or Tax Return with respect to which they filed or do file jointly; otherwise, "Hillman" means James Hillman .

"Tax" means any federal, state, local, or foreign income, gross receipt, employment, withholding, social security, unemployment, alternative minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty or addition thereto.

"Tax Benefit" means, with respect to Hillman (solely to the extent relevant to determine a Tax Benefit to Hillman) and subject to Paragraph 8(d) and (e) hereof, for the 2000 taxable year and subsequent taxable years through and including the 2008 taxable year for Hillman (including amounts that flow through to Hillman through his ownership of Peregrine), (i) the net reduction in any Tax otherwise owed by Hillman; or (ii) the refund of any Tax paid by Hillman to the extent that such reduction or refund is attributable to any payments or transfers made by Hillman pursuant to Paragraph 3 or Paragraph 8 of this Agreement giving rise to an item of deduction, credit, offset, carryforward or carryback thereof, or any other reduction in net Tax liability of Hillman.

"Tax Refund," with respect to Hillman (solely to the extent relevant to obtain a Tax Refund of a Tax previously paid by Hillman) and subject to Paragraph 8(d) and (e) hereof, means the recovery, after the date hereof, of any Tax paid by Hillman in any taxable year through and including the 2008 taxable year (including amounts treated as a refund or credit of a tax overpayment pursuant to Code section 1341), attributable to any amounts paid or payable by, or transfers made by Hillman to the Receiver, the Trustee, PinnFund, Peregrine, and/or the Funding Entities pursuant to Paragraph 3 or Paragraph 8 hereof, including any Tax Refund of Tax paid by Hillman and applied for but not received as of the date hereof.

"Tax Return" means any return, declaration, report, claim for refund (including but not limited to a claim for refund under Code section 6411), information return or statement relating to any Tax, including any attachments thereto and amendments thereof.

586157v10

<u>Overriding Tax Provisions</u>.

Notwithstanding the foregoing or any other provision of this Agreement to the contrary:

1.      No Tax Benefit shall be required to be paid by Hillman with respect to the first $100,000 of the aggregate gross taxable income (i.e., taxable income computed without regard to any deduction, loss, credit or other offset) of Hillman and Freema Hillman for the 2001 through and including the 2008 taxable years.

2.      It is the intention of the Parties that, and the Parties agree that, subject to the immediately preceding paragraph 1 of this Schedule F, (i) the provisions of this Agreement regarding the transfer and payment of Assets, Tax Benefits and Tax Refunds by Hillman shall have no net positive or negative Tax effect to Hillman and/or Freema Hillman after taking into account all Tax effects to Hillman and Freema Hillman of the transfer and payment of Assets, continued ownership or retention of any Assets pending transfer and payment of such Assets, and/or other holding, dealing with or disposition of Assets, Tax Benefits and Tax Refunds in compliance with this Agreement (including without limitation income, gain, deduction, loss, expense, credit, or recapture of any of the foregoing as a result of the turn over of Assets; retaining ownership of Assets, liquidation of Assets, assignment of income stream from Assets, and/or other actions required of Hillman and Freema Hillman under this Agreement); (ii) Hillman and Freema Hillman shall not be subjected to any penalties or other liabilities (other than Excluded Liabilities) as a result of Tax Return filings or other actions required of them under this Agreement, including the cost of preparation of Tax Returns as directed by the Trustee, and if any such penalties or other liabilities are incurred by Hillman or Freema Hillman, the Trustee shall be responsible therefore (but the Trustee shall not be responsible for Excluded Liabilities); (iii) if there is any Tax audit, examination, controversy, dispute, administrative appeal, contest, litigation or other proceeding relating to such Tax matters, all costs thereof will be borne by the Trustee (other than any costs that constitute Excluded Liabilities); and (iv) if any Tax audit, examination, controversy, dispute, administrative appeal, contest, litigation or other proceeding relating to such Tax matters results in the reduction of a Tax Refund or Tax Benefit previously paid by Hillman to the Trustee, the Trustee shall be required to repay such Tax Benefit to Hillman (other than a Tax Benefit that constitutes an Excluded Liability).  By way of example and not by way of limitation on the foregoing, the Trustee shall use the Assets, Tax Refunds or Tax Benefits, to pay any Tax with respect to Assets that (i) include proceeds of income or gain recognized for Tax purposes, (ii) of which Hillman or Freema Hillman is treated as the owner or person otherwise subject to Tax before or after the Effective Date of this Agreement, or (iii) are held, retained, operated, sold, exchanged or otherwise disposed of pursuant to this Agreement; and the Trustee shall use the Assets to pay any such Tax incurred by Hillman or Freema Hillman as a result of the payment of any such Tax or the assumption of liability for any such Tax (other than any Tax which constitutes an Excluded Liability.

3.      In the event and to the extent that any audit, litigation, suit for refund, or other controversy relating to any Tax Refund or Tax Benefit pursuant to Paragraph 8(c)(iii) hereof (each a "Tax Proceeding") involves additional issues that relate to any Tax (but that do not relate to any Tax Refund or Tax Benefit), the calculation of any Tax Refund or Tax Benefit shall not be reduced by, offset by, or otherwise calculated by reference to the resolution of such other Tax issues, but only to the extent that such other Tax issues are directly attributable either (i) to a

-29-

position on a Tax Return filed by Hillman before the Effective Date; (ii) to a position on a Tax Return prepared and filed in accordance with this Agreement that does not directly relate to a payment or transfer made pursuant to Paragraph 3 or Paragraph 8 hereof and was not pursuant to a direction or instruction by the Trustee; or (iii) to a position on a Tax Return prepared and filed in accordance with this Agreement that directly relates to a payment or transfer made pursuant to Paragraph 3 or Paragraph 8 hereof, if such Tax issue is attributable to (i) the determination that any representations Hillman has made to the Trustee as of the Effective Date are false; or (ii) any subsequent statements or actions of Hillman are contradictory to any representations made to the Trustee as of the Effective Date.  In the event that such Tax Proceeding results in the recovery of a Tax Refund or calculation of a Tax Benefit that is less than such amount would otherwise be without the inclusion of such other Tax issues, Hillman shall nevertheless have a continuing and ongoing obligation to pay to the Trustee the full amount of any Tax Refund or Tax Benefit.  In addition, in conjunction with any Tax Proceeding, Hillman agrees not to resolve any such Tax matter without the prior written consent of the Trustee (which consent may not be unreasonably withheld unless it results in the forfeiture or reduction of or otherwise adversely affects the calculation of any Tax Refund or Tax Benefit).

## SCHEDULE G

## TAX MATTER DISCLOSURES

In connection with the representations, warranties and covenants made by Hillman in Paragraph 12 hereof:

(i)     Peregrine has not filed a Tax Return for its 2000 taxable year.

(ii)     The Franchise Tax Board of California is currently conducting an audit of Hillman's California personal income tax returns for his 1998 and 1999 taxable years.

586157v10

# EXHIBIT 1

## SEC CONSENT JUDGMENT

(Attached hereto)

# EXHIBIT 2

## ASSET ALLOCATION LETTER AGREEMENT

(Attached hereto)

586157v10

# EXHIBIT 3

`

## BARCLAY BANK DOCUMENTS

(Attached hereto)

 **COPY**

**BARCLAYS BANK PLC**
Barbados Offshore Banking Centre
First Floor, Barclays House, P.O. Box 180, Rendezvous, Christ Church, Barbados
Telephone: (246) 431-5294
Fax: (246) 429-4785/228-8534

MAIL TO:                                    DATE: 08/05/00
MICHAEL J FANGHELLA                         OUR REF: BOBCPT07579
                                            YOUR REF:

| TRANSFER AMOUNT | DATE | BENEFICIARY |
|---|---|---|
| USD2,000,000.00 | 08/06/00 | PEREGRINE FUNDING |

WE REFER TO YOUR RECENT INSTRUCTIONS FOR THE TRANSFER OF FUNDS. PLEASE NOTE
THAT WE HAVE DEBITED YOUR ACCOUNT NUMBER 1021833 VALUE 08/06/00 AS FOLLOWS:

| | | |
|---|---|---|
| AMOUNT OF TRANSFER | USD | 2,000,000.00 |
| CORRESPONDENT'S CHARGES | USD | |
| | | |
| SUB TOTAL | USD | 2,000,000.00 |
| AT A RATE OF 1 | | |
| | | |
| LOCAL EQUIVALENT | USD | 2,000,000.00 |
| TRANSFER COMMISSION | USD | 175.00 |
| SWIFT/TELEX CHARGES | USD | 20.00 |
| | | |
| TOTAL DEBIT | USD | 2,000,195.00 |

FOR BARCLAYS BANK PLC                                    SJAC

# BARCLAYS                    COPY

Barbados Offshore Banking Centre
First Floor, Barclays House, P.O. Box 180, Rendezvous, Christ Church, Barbados
Telephone: (246) 431-5294
Facsimile: (246) 429-4785/228-8534

MAIL TO:                          DATE: 09/06/00
MICHAEL J FANGHELLA               OUR REF: BOBCPT07606
                                  YOUR REF:

| TRANSFER AMOUNT | DATE | BENEFICIARY |
|---|---|---|
| USD2,850,000.00 | 09/06/00 | PEREGRINE FUNDING |

WE REFER TO YOUR RECENT INSTRUCTIONS FOR THE TRANSFER OF FUNDS. PLEASE NOTE
THAT WE HAVE DEBITED YOUR ACCOUNT NUMBER 1021833 VALUE 09/06/00 AS FOLLOWS:

| | | |
|---|---|---|
| AMOUNT OF TRANSFER | USD | 2,850,000.00 |
| CORRESPONDENT'S CHARGES | USD | |
| SUB TOTAL | USD | 2,850,000.00 |
| AT A RATE OF 1 | | |
| LOCAL EQUIVALENT | USD | 2,850,000.00 |
| TRANSFER COMMISSION | USD | 175.00 |
| SWIFT/TELEX CHARGES | USD | 20.00 |
| TOTAL DEBIT | USD | 2,850,195.00 |

FOR BARCLAYS BANK PLC                                    SJAC

**Barclays Bank PLC**

IN REPLYING PLEASE QUOTE

DEPT

Branch          Date  09/06/2000

PLEASE NOTE THAT YOUR ACCOUNT HAS BEEN CREDITED ON INDIVIDUAL RESERVE AS FOLLOWS:- AMOUNT TRANSFERRED FROM A/C 23-1021752 TO EFFECT WIRE TRANSFER FOR US 2850 000.00 REF 80301707606.

23-1021833

MICHAEL FANGHELLA

CHECKED BY

PARTICULARS

| Amount |
|---|
| US$350 000.00 |

for Barclays Bank PLC

MANAGER.

000330
(A1008)

IN REPLYING PLEASE QUOTE

DEPT

**Barclays Bank PLC**

Branch          Date  09/06/2000

PLEASE NOTE THAT YOUR ACCOUNT HAS BEEN DEBITED AS FOLLOWS:- AMOUNT TRANSFERRED TO A/C NO 23-1021833 TO EFFECT WIRE TRANSFER FOR US 2 850 000.00 REF 80301707606.

23-1021752

MICHAEL FANGHELLA

PARTICULARS

| Amount |
|---|
| US$ 350 000.00 |

for Barclays Bank PLC

CHECKED BY

MANAGER.

V00215
(A1058)

BY REPLYING PLEASE QUOTE

**Barclays Bank PLC**

OFFSHORE BANKING CENTRE / BARBADOS

DEPT.                                                                     Branch                    Date  08/08/2000

PARTICULARS

PLEASE NOTE THAT YOUR ACCOUNT HAS BEEN **CREDITED** UNDER THE USUAL RESERVE AS FOLLOWS :—  AMOUNT TRANSFERED
FROM A/C 23-10217.53 TO EFFECT WIRE TRANSFER OF USD 2,000 000.00 REF BBL07017519
DATED 08/08/2000

23-10 21833

for Barclays Bank PLC

Amount
USD 1,000 000.00

MANAGER.

CHECKED BY

MICHAEL FANGHELLA
c/o SAMUEL KE SALL
2051 PALOMAR AIRPORT ROAD
#100 CARLSBAD, CA 92009
U.S.A.

00023D
(A1068)

---

HI REPLYING PLEASE QUOTE

**Barclays Bank PLC**

DEPT.

PARTICULARS                                Branch                    Date  08/08/2000

PLEASE NOTE THAT YOUR ACCOUNT HAS BEEN **DEBITED** AS FOLLOWS :— Amount TRANSFERED TO A/C 10-
23-1021833 TO EFFECT WIRE TRANSFER OF BBL 07017519 FOR USD2000 000.00.

23-10 21752

for Barclays Bank PLC

Amount
USD 1,000 000.00

MANAGER.

CHECKED BY

MICHAEL FANGHELLA

00021G
(A058)

[Stamp: CLAYS BANK P]
[Stamp: BARCLAYS BANK PLC / OFFSHORE BANKING CENTRE / BARBADOS]

TRANSMISSION VERIFICATION REPORT

TIME : 11/30/2001 12:30
NAME : PINNFUND
FAX  : 8584901783
TEL  : 8584901783

| | |
|---|---|
| DATE,TIME | 11/30  12:28 |
| FAX NO./NAME | 16192331158 |
| DURATION | 00:01:11 |
| PAGE(S) | 05 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

**SEC v. PINNFUND USA, INC, et. al.**
**United States District Court - Southern District of California**
**Case No. 01 CV 0496 H (LAB)**
**(LA-2423)**

## SERVICE LIST

1

2

3

4

5   THOMAS BROWN
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLC
6   333 S. HOPE STREET, 48TH FLOOR
    LOS ANGELES, CA 90071
7   Facsimile:   (213) 620-1398
    *Attorney for Defendant James L. Hillman*
8
    PAMELA NAUGHTON
9   SHEPPARD, MULLIN, RICHTER & HAMPTON LLC
    12544 HIGH BLUFF DRIVE, SUITE 300
10  SAN DIEGO, CA 92130-3051
    Facsimile:   (858) 509-3691
11  *Attorney for Defendant James L. Hillman*

12  LAURA S. TAYLOR
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLC
13  501 W. BROADWAY, SUITE 1900
    SAN DIEGO, CA 92101
14  Facsimile:   (619) 234-3815
    *Attorney for Defendant James L. Hillman*
15
    ALI M.M. MOJDEHI
16  BAKER & MCKENZIE
    101 W. BROADWAY, 12TH FLOOR
17  SAN DIEGO, CA 92101
    Facsimile:   (619) 236-0429
18  *Attorney for Bankrutpcy Trustee for Defendants Peregrine Funding, Inc.,*
    *Allied Capital Partners, Grafton Partners, Six Sigma, LLC a/k/a 6 Sigma, LLC*
19
    CHARLES G. LA BELLA
20  McKENNA & CUNEO, LLP
    750 B STREET, SUITE 3300
21  SYMPHONY TOWERS
    SAN DIEGO, CA 92101
22  Facsimile:   (619) 595-5450
    *Receiver for PinnFund USA, Inc.*
23
    DAVID L. OSIAS
24  DEBRA RILEY
    ALLEN, MATKINS, LECK, GAMBLE & MALLORY LLP
25  501 W. BROADWAY, SUITE 900
    SAN DIEGO, CA 92101
26  Facsimile:   (619) 233-1158
    *Attorneys for Receiver*
27

28

ANTHONY J. DAIN
FREDERIC G. LUDWIG III
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
530 B STREET, SUITE 2100
SAN DIEGO, CA 92101
Facsimile:   (619) 235-0398
*Attorney for Plaintiff-in-Intervention Ardantz Associates Limited Partnership*

JOHN J. BARTKO
CHRISTOPHER J. HUNT
BARTKO, ZANKEL, TARRANT & MILLER
900 FRONT STREET, SUITE 300
SAN FRANCISCO, CA 94111
Facsimile:   (415) 956-1152
*Attorneys for Proposed Intervenors Tom Frame, Stan Friedman, Bruce Miller on behalf of Green/Fillmore Partners, Don Share, Allen Stephenson and Ron Vandenberghe*

- 3 -